Arthur **SCHILLER**, Plaintiff,

v.

**MUTUAL BENEFIT LIFE INSURANCE COMPANY, Defendant.**

No. CIV–1–88–294.

United States District Court, E.D. Tennessee, S.D.

April 11, 1989.

---

Marvin Berke, Chattanooga, Tenn., for plaintiff.

George W. Carpenter, Chattanooga, Tenn., for defendant.

## MEMORANDUM

EDGAR, District Judge.

Plaintiff Arthur Schiller was employed as a mechanic at Marshal Mize Ford, Inc. ("Marshal Mize"), a Ford dealership in Chattanooga, Tennessee, when on December 7, 1984, he suffered a back injury. Defendant Mutual Benefit Life Insurance Company ("Mutual Benefit") had issued to Marshal Mize a group insurance policy numbered G31643 ("the policy") providing for long-term disability benefits for Marshal Mize employees. The plaintiff was insured under the policy.

The policy contained the following language defining "total disability":

A person insured is considered "Totally Disabled" if:

(i) during the first 36 months of One Period of Total Disability, the Person Insured is under the regular care and attendance of a Licensed Physician (other than him or herself) and completely unable to perform the material duties of his or her regular occupation or employment; and

(ii) After the first 36 months of any One Period of Total Disability, the Person Insured is completely unable to perform the material duties of any and every gainful occupation or employment for which the person is or becomes reasonably fitted by education, training or experience.

There are two issues in this case. The first is whether the plaintiff is entitled to receive benefits under the definition of "Total Disability" as it applies after the first 36 months. The second is how should benefits under the policy be calculated.

This dispute comes within the ambit of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* which preempts state causes of ac-tion. 29 U.S.C. § 1144; *Pilot Life v. Dedeaux,* 481 U.S. 41–56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39, 53 (1987).

The standard which this Court, in this circuit, is to use in ascertaining the validity of Mutual Benefit's actions under the policy was, until recently, whether Mutual Benefit acted in an arbitrary and capricious manner in denying benefits to the plaintiff. *See, e.g., Cook v. Pension Plan for Salaried Employees of Cyclops Corp.,* 801 F.2d 865 (6th Cir.1986); *Moore v. Reynolds Metal Company Retirement Program for Salaried Employees,* 740 F.2d 454, 457 (6th Cir.1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985). However, this rule has recently been changed by the United States Supreme Court in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), which holds that that this Court must exercise a *de novo* standard of review over the actions of Mutual Benefit.

### I. *Disability After 36 Months*

In May 1988, Mutual Benefit cut off disability payments to plaintiff after 40 months.[1] Plaintiff seeks a declaratory judgment and past benefits based upon his contention that he is "completely unable to perform the material duties of any and every gainful occupation or employment for which he is or becomes reasonably fitted by education, training or experience," under the terms of paragraph (ii) of the policy's definition of "Total Disability."

In its *de novo* review of Mutual Benefit's actions, this Court is to look to the "federal common law" for guidance. *Firestone,* 489 U.S. at —— ——, 109 S.Ct. at 954–955, 103 L.Ed.2d at 92–93. In *Pilot Life v. Dedeaux,* the Supreme Court has said that courts are to develop substantive federal law derived from the federal policy regarding private welfare and pension plans in a fashion similar to the way that the courts have fashioned substantive federal law under section 301 of the Labor Management Relations Act of 1947 ("LMRA") in accord-

---

1. Mutual Benefit paid four months beyond the first 36 months while it had plaintiff's claim under investigation. The parties do not dispute the payment to plaintiff for these months.

ance with the policy of our national labor laws. 481 U.S. at 56–57, 107 S.Ct. at 1557–1558, 93 L.Ed.2d at 52–53.

In *Firestone*, the Supreme Court has indicated that if the ERISA plan does not give the employer or administrator discretionary or final authority to construe uncertain contract terms, the courts are to review the employee's claim as it would any contract claim "by looking to the terms of the plan and other manifestations of the parties intent." 489 U.S. at ——, 109 S.Ct. at 955, 103 L.Ed.2d at 94.

In the case *sub judice*, we are dealing with the interpretation of an insurance policy. Insurance policies have been traditionally interpreted in accordance with state law. Under section 301 of the LMRA, it is possible to resort to state law in interpreting collective bargaining agreements if state law is compatible with federal policy. Any state law so utilized, however, becomes absorbed as federal law. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957).

The language in the policy defining disability after the first 36 months is fairly typical of that which appears in many insurance policies and is sometimes referred to as a "general disability" clause. In interpreting this language, the majority of state courts have determined that:

> ... it is not sufficient, in order to recover under the "general disability" clause, that the insured is disabled only from engaging in his usual business or occupation, but that he must also be unable to engage in any comparable occupation or employment for which he is fitted by education, experience, and physical condition. These cases proceed upon the the theory that the term "total disability" as used in general disability clauses is a relative one, depending in a large measure upon the character of the occupation or employment and the capabilities of the insured and upon the circumstances of the particular case. While under this rule it is not sufficient, in order to recover under the disability clause, that

the insured is disabled from engaging in his usual business or occupation, he need not be disabled from following any occupation whatsoever regardless of its character.

44 Am.Jur.2d *Insurance* § 1477 at 439–40. In *Couch on Insurance 2d* (Rev. ed.) § 82:36, the following general statement appears:

> Where the coverage in a group insurance policy is stated in terms of an inability of the insured to work at "any occupation" or do "any work," it is held that these terms must be converted into words of concrete significance and must be construed to mean the ordinary employment of the particular person insured, or such other employment, if any, approximating the same livelihood as the insured might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities.

The plaintiff in this case is an auto mechanic by trade. He is a high school graduate with some vocational training in automobile mechanics. An intelligence test puts him in the "low average" range. He has worked both as a common laborer and as an auto mechanic.

The orthopedic physician who performed the back surgery (diskectomy at the L4–L5 level)[2] on plaintiff in 1985, and who has treated him all along, said as of June 22, 1987, that plaintiff could do "light duty," meaning that plaintiff could lift between 10 and 20 pounds intermittently, stand and walk intermittently for approximately an hour at a time up the three to four hours per eight hour shift. Plaintiff could, according to his physician, bend occasionally but not more than one hour total per eight hour shift. Plaintiff should be able to sit as long as he is able to change positions or get up and walk around. Plaintiff should do no climbing. Overhead work should be kept to a minimum, and he may push and pull objects approximately 10 to 20 pounds in weight if kept at waist level. Plaintiff does have some pain and takes anti-inflammatory medication.

---

2. Plaintiff had similar surgery at the same loca-    tion in the 1970s.

Plaintiff has remained unemployed since his December 1984 back injury. He mostly lies around and watches television. He lives by himself in a mobile home and is able to cook and to do housework. He has not sought employment since his back injury. Occasionally he goes fishing.

Given his medical situation and his abilities, the Court heard testimony from two "vocational rehabilitation counsellors" who hold widely divergent views on what jobs plaintiff can perform. The Court finds that while plaintiff cannot any longer perform as an auto mechanic, there are jobs in the Chattanooga area which he can do; and while these jobs may not pay him what he received at Marshal Mize Ford, they would be more than minimum wage jobs and would not be demeaning for someone of plaintiff's education, training and experience.

Plaintiff has the burden of proving by a preponderance of the evidence that he is totally disabled within the terms of the policy. He has not carried this burden. One factor considered by the Court in this connection is that the plaintiff has not in any way attempted to find employment. The Court concludes that the plaintiff is not entitled to recover disability benefits under the policy for any period after May 1988.

## II. *Calculation of Benefits*

Mutual Benefit paid benefits at an average rate of $1,168 per month for the first 40 months. The total amount paid plaintiff was $40,485.91. The policy provides that disability benefits are to be calculated at 60% of "Monthly Earnings" up to a maximum of $1,500 per month. Mutual Benefit says that plaintiff is to be considered as an "hourly employee." Therefore, monthly charges are to be calculated on a 40 hour week maximum. Specifically, the language relied upon by Mutual Benefit provides as follows:

If hourly employees are insured, their Monthly Earnings will be based on their hourly rate of pay. In no event will more than 40 hours a week be considered in determining Monthly Earnings for hourly employees.

Plaintiff, as a mechanic, was paid on the basis of a "flat rate" per job. For example, he was paid (and the customer was charged) a flat rate for, let's say, a brake job. The amount of this flat rate for a brake job is determined by setting a supposed estimate as to how long it should take to do that job and the mechanic is compensated at an "hourly rate" of $10 per hour for that work. So, if it was estimated that such a job would ordinarily take two hours, plaintiff would be paid $20 for doing a brake job whether or not he did that job in 20 minutes or two and a half hours. In reality, therefore, plaintiff was paid on a piecework basis—not on an hourly basis as an "hourly employee." He did not work overtime although his pay records often showed more than 40 hours of work per week.

Therefore, considering the facts of this case in light of the language of the policy, Mutual Benefit erroneously reduced plaintiff's benefits by calculating his "Monthly Earnings" on the assumption that plaintiff was an "hourly employee" working over 40 hours per week. The Court calculates the benefits that *should* have been paid the plaintiff for the 40 hour monthly period as follows:

Marshal Mize paid the plaintiff $28,304.68 for 49 weeks of work in 1984. This is a weekly pay rate of $577.65 per week for 1984. This amount times 52 weeks equals $30,037.80. This figure divided by 12 months equals $2,503.15 per month. Sixty-percent of this is slightly above the policy maximum of $1,500 per month. Therefore, plaintiff should have received the policy maximum, $1,500 per month, for 40 months—or $60,000.

Plaintiff was paid $40,485.91. Mutual Benefit receives credit under the policy for $6,924.62 which the plaintiff received as worker's compensation. Therefore, the total amount for which Mutual Benefit is due credit is $47,410.53. $60,000.00 minus $47,410.53 equals $12,589.47. The plaintiff is entitled to recover $12,589.47 under the terms of the policy for his disability during the first 40 months after his injury.

An appropriate judgment will enter.

## JUDGMENT

This action came on for trial on April 3, 1989, before the Honorable R. Allan Edgar, District Judge, presiding, and the issues having been duly tried and a decision having been duly rendered and fully set forth in the memorandum filed herewith, it is ORDERED AND ADJUDGED that the plaintiff, Arthur Schiller, recover of the defendant, Mutual Benefit Life Insurance Company, the sum of Twelve Thousand Five Hundred Eighty–Nine and 47/100 Dollars ($12,589.47) with interest thereon at the rate of nine and fifty-one hundredths percent (9.51%) as provided by law, and his costs of action. All other claims asserted by the plaintiff for declaratory and monetary relief are DISMISSED.

SO ORDERED.