ANNE M. GURNACK, administratrix,[1] vs. JOHN HANCOCK
MUTUAL LIFE INSURANCE COMPANY.

Essex. November 8, 1989. - February 26, 1990.

Present: WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Employee Retirement Income Security Act. Insurance*, Life insurance, Accidental death benefits.

Discussion of the scope of judicial review available to one aggrieved by the denial of a claim under an employee benefit plan regulated pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. (1982). [751-752, 754-755]

An insurance company which issued two group life insurance policies providing accidental death benefits to an employee and served as administrator of these employee benefit plans, which were regulated under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. (1982), did not, as a matter of law, act arbitrarily and capriciously either in changing its mind about accepting liability for the employee's death as an accidental one once legitimate concerns about the cause of the employee's death had been raised, or in determining after suit had been brought not to pay the claim but, instead, to refer it to counsel to defend. [753-754]

CIVIL ACTION commenced in the Superior Court Department on October 25, 1979.

The case was heard by *Robert W. Banks*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Walter J. Connelly* for the defendant.

*David H. Locke* (*A. Arnold Lundwall* with him) for the plaintiff.

WILKINS, J. William Gurnack, the plaintiff's decedent, died on September 7, 1978, at his summer home in Becket as

_____

[1] Of the estate of William Gurnack.

a result of a drug overdose. At the time of his death, Gurnack, a physician and an employee of the defendant (Hancock), was covered under two group life insurance policies issued by Hancock, providing accidental death benefits totaling $230,000. Hancock served as administrator of these employee benefit plans, which were regulated under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. (1982). American Home Assurance Company (American Home) was a reinsurer of 85% of the risk for accidental death under the policy that provided accidental death coverage of $150,000. The plaintiff has, by amended complaint, brought this action solely under 29 U.S.C. § 1132, to recover accidental death benefits under each policy.[2]

The plaintiff presented her case on the twin allegations that (1) on June 15, 1979, a claim executive of Hancock accepted liability for Gurnack's death as an accidental one and notified American Home, the reinsurer, of that decision but then arbitrarily and capriciously changed his mind when, about three weeks later, American Home declined to accept his decision and sought further information and (2) in January, 1980, after suit had been brought in October, 1979, an attorney in Hancock's legal department arbitrarily and capriciously decided not to pay the claim and referred it to counsel to defend. The judge accepted each allegation, ruling that each decision not to recognize liability was arbitrary and capricious. We granted the plaintiff's application for direct appellate review. We conclude that, as a matter of law, Hancock was not arbitrary and capricious either in changing its mind about liability or in determining after suit had been brought that the case should be defended.

We recite the facts found by the judge, testified to by Hancock employees, or shown in documents admittedly

---

[2]Originally the plaintiff sued on common law principles to recover accidental death benefits from Hancock. After the Supreme Court of the United States decided *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987), concerning the preemption of common law claims by ERISA, the plaintiff amended her complaint to allege her claims under ERISA.

known to or available to Hancock. On June 15, 1979, a Hancock claim executive, authorized to accept liability on the claims by Gurnack's estate, wrote to the reinsurer, American Home, that Hancock "has accepted liability for this death as accidental." He asked that American Home wire him confirmation of its acceptance of liability as soon as possible. At that time, the claim executive had a death certificate, issued two days after Gurnack's death, that described his death as accidental. An autopsy report and investigative reports of Hancock employees furnished additional information.

On the night of September 7, 1978, two doctors who had shared the Becket summer home with Gurnack found him dead lying in bed in his underwear. The remainder of his clothes were not found immediately. The police found neither pill containers nor a note. During an autopsy drug-like crystals were found in his stomach.

A pathologist advised State Trooper John F. Flaherty that it would have been "next to impossible for anyone to force [Gurnack] to take that amount of drugs." The county medical examiner said that "[y]ou would have to assume death was the result of an accidental overdose of drugs." The police investigation of Gurnack's death terminated at this point.

It seems clear from the claim executive's testimony that Hancock might ordinarily have issued checks before hearing from American Home (but did not) and that, in any event, if American Home had accepted liability, Hancock would have paid the accidental death benefit under each policy. American Home, however, was not disposed to accept liability based on the information Hancock had provided. On July 3, 1979, a representative of American Home wrote back to Hancock seeking more information. The letter begins: "If nothing else would trigger a more in depth investigation of a suicide motive, [the pathologist's] statement to Trooper Flaherty that 'it would be next to impossible for anyone to force the victim to take that amount of drugs,' would certainly do so." He raised certain questions and then asked "How can a person take all those drugs and there is no evidence of containers around?" He added that "[t]he question I want an-

swered is, how can a doctor take an 'accidental overdose,' particularly when it was such a large overdose that some pills were still undigested." The letter concluded with the statement that "American Home wants a lot more investigation and satisfactory answers to how and why before it will accept liability on this claim." Hancock's claim executive testified that American Home had raised matters that he had not considered. Hancock decided to renew its investigation and not to pay the claim. Hancock did not advise the administratrix of Gurnack's estate that it had accepted liability or that, having done so, it had changed its mind.[3]

In January, 1980, an attorney in Hancock's legal department reviewed the claim after suit had been brought and determined that it should be defended. The attorney had information in addition to that which had been in the Gurnack claim file in June, 1979. We agree with the trial judge that that information was not sufficient to conclude that Gurnack's death was not accidental. On the other hand, that information was not sufficient to show that Gurnack's death was accidental. We need not recite the additional information available to Hancock in January, 1980.[4]

The case was tried on the theory that Hancock would be liable if its action in denying coverage was arbitrary and capricious. Neither party urges that we should review the record, or that the judge should have decided the case, applying a de novo standard of review of Hancock's actions. After judgment had been entered in the Superior Court, the Supreme Court of the United States decided *Firestone Tire &*

---

[3]The judge found that Hancock had in the files of its medical director a letter from Gurnack that indicated that Gurnack had attempted suicide in 1969 before he became a Hancock employee. There was no evidence that Hancock's claim executive knew of the record of Gurnack's suicide attempt when he decided on behalf of Hancock to accept liability for the death.

[4]After January, 1980, more information was uncovered that provided reason to believe that Gurnack may have committed suicide. On the plaintiff's theory of liability, based on Hancock's arbitrary and capricious conduct in June and July of 1979, and again in January, 1980, this additional information is irrelevant.

*Rubber Co.* v. *Bruch*, 109 S. Ct. 948 (1989), in which the Court held that, in actions under 29 U.S.C. § 1132(a)(1), challenges to the denial of benefits, at least those concerning "denials of benefits based on plan interpretation" (*id.* at 953), are "to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 956. Hancock had no such discretion in this matter. The United States Court of Appeals for the First Circuit has said that the *Bruch* standard applies retroactively to pending cases. *Burnham* v. *Guardian Life Ins. Co.*, 873 F.2d 486, 489 (1st Cir. 1989).

The *Bruch* case involved interpretation of the terms of an ERISA plan and did not involve, as the case before us does, a question of fact. Courts now seem divided as to whether to review a denial of benefits based on determinations of fact by making a de novo fact determination or by applying an abuse of discretion or arbitrary and capricious test. Compare *Ques-Tech, Inc.* v. *Hartford Accident & Indem. Co.*, 713 F. Supp. 956, 963 (E.D. Va. 1989) ("it seems unlikely that Congress intended federal courts to review *de novo* every factual determination inherent in coverage decisions"), with *Schiller* v. *Mutual Benefit Life Ins. Co.*, 713 F. Supp. 1064, 1065 (E.D. Tenn. 1989) (applying de novo standard in deciding factual question whether insured was totally disabled within meaning of insurance policy).

The arbitrary and capricious standard was adopted initially under ERISA to permit plan fiduciaries to exercise their judgment on questions of coverage. It is a deferential standard, saving courts from having to decide the merits of particular issues. In this case, however, the arbitrary and capricious standard was applied below not as a shield to avoid excessive judicial interference (*Economu* v. *Borg-Warner Corp.*, 662 F. Supp. 1047, 1049 [D. Conn. 1986], aff'd, 824 F.2d 181 [2d Cir. 1987]), but as a sword to impose liability on Hancock, even though Hancock might not be liable if the court had decided the liability question de novo.

We have substantial doubt whether, under the Federal common law of ERISA, a plan administrator may appropriately be held liable because it refused to pay a claim for an arbitrary and capricious reason when the beneficiary does not prove that the arbitrary and capricious act caused her any harm.[5] Hancock does not challenge the judgment against it in these precise terms. It does argue, however, that in deciding whether its action was arbitrary and capricious, the judge should have considered all the information Hancock ultimately gathered bearing on whether Gurnack's death was accidental. We are aware of no ERISA action in which liability for plan insurance benefits was established solely because at one point the administrator acted arbitrarily and capriciously in declining to pay a claim but further disclosures provided information that showed that the ultimate decision to deny coverage was not arbitrary and capricious.

Even if we accept the plaintiff's position that reversal of a decision that there was liability for accidental death benefits could be arbitrary and capricious under the law of ERISA, we conclude that the claim executive's change of mind was

---

[5]Under Massachusetts law, the denial of a claim under an insurance policy, following an inadequate claims investigation, would not warrant liability unless the claimant were harmed by that inadequate investigation. See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 678 (1983). In *Dozsa* v. *Crum & Forster Ins. Co.*, 716 F. Supp. 131, 139 (D.N.J. 1989), the plan administrator denied coverage of a claim on the basis of an exclusion in an inapplicable policy and the judge characterized that act as a clear abuse of discretion that would warrant liability. The judge also held, however, that on a de novo test there was coverage under the applicable plan language. See *Crocker* v. *Southern Bell Tel. & Tel. Co.*, 11 Employee Benefits Cas. (BNA) 1708, 1714 (Sept. 11, 1989) (the District Court should have made a finding "on the obviously important question of whether — putting aside any administrative misfeasance — [the plaintiff] actually qualified for . . . benefits under the express terms of the plan documents"); *Wardle* v. *Central States, Southeast & Southwest Area Pension Fund*, 627 F.2d 820, 825 n.10 (7th Cir. 1980), cert. denied, 449 U.S. 1112 (1981) ("If an earlier denial that is arbitrary and capricious because of insufficient evidence is followed by a denial on reconsideration that is based on additional information that provides an adequate basis for the decision, we surely should not order payment of the applicant's benefits absent evidence of bad faith").

not arbitrary and capricious. His initial decision to pay the claim without further reflection and investigation may have been the product of shoddy, perhaps even seriously deficient, claims handling, but surely he did not act arbitrarily and capriciously in changing his mind once American Home raised legitimate concerns about the circumstances of Gurnack's death. To pay the claim in the face of the well-articulated concerns of the reinsurer would itself have been a questionable action. The plaintiff did not know that Hancock had decided to pay the claim, and she was not prejudiced by Hancock's change of mind unless in fact Gurnack's death was accidental.

The decision of Hancock's lawyer in January, 1980, to refer the claims to outside counsel also was not arbitrary and capricious. At that time, it was not established that the plaintiff's common law claim was preempted by ERISA. The circumstances of Gurnack's death tended to overcome the common law presumption against suicide (see *Dow* v. *United States Fidelity & Guar. Co.*, 297 Mass. 34, 38 [1937]). The insurance policies required due proof of accidental death. Even under ERISA law, the plaintiff would have to prove that, on the record before Hancock, Hancock's failure to recognize the death as accidental was arbitrary and capricious. See *Voliva* v. *Seafarers Pension Plan*, 858 F.2d 195, 196 (4th Cir. 1988). The issue of suicide or accident was not clearly resolved on the record Hancock had accumulated on that date.

The last word on the proper procedure for judicial review of ERISA claim denials has not been written. It seems strange to characterize an ERISA plan administrator as a fiduciary, and to apply an abuse of discretion or an arbitrary and capricious standard in reviewing that administrator's conduct, when the fiduciary is the insurer whose own funds would be used to satisfy a claim. That conflict of interest suggests to this common law court that such a fiduciary's decision making should not be isolated from the thorough scrutiny that an evidentiary trial de novo would provide (and should not simply be tested by a de novo review of the record

before the plan administrator). The Supreme Court is, however, the final arbiter of these questions of judicial review unless Congress amends the law. We think that the plaintiff was entitled at least to a determination, on the basis of the entire information available to Hancock before trial, whether Hancock was arbitrary and capricious in declining liability. Because Hancock had no discretion to interpret the plan, ERISA law, as stated in the *Bruch* opinion, entitled the plaintiff to at least an independent (de novo) judicial determination on that full record of the question whether Gurnack's death was more probably than not accidental.[6] *Firestone Tire & Rubber Co.* v. *Bruch,* 109 S. Ct. at 956.

The question of a new trial has not been argued to us in the briefs. Each party has accepted the arbitrary and capricious standard as applicable. We can tell from the record that there were unrecorded conferences about how the case would be tried. The trial judge will be in a better position than we to decide whether the plaintiff, in justice, is entitled to pursue her claim on a revised theory. We vacate the judgment and remand the case to the Superior Court where, within thirty days of the entry of the rescript there, the plaintiff may move for such relief as she deems appropriate.

*So ordered.*

---

[6]We think that it is strange that a law designed to protect employees should be construed to provide them with less complete judicial review than was available before ERISA was adopted. If we are right, the plaintiff should be entitled to a full evidentiary trial at which, with the advantage of the presumption that the cause of a death is not suicide, she could try to prove by a preponderance of the evidence that Gurnack's death was accidental.