FRED COHEN *vs.* LIBERTY MUTUAL INSURANCE COMPANY.

No. 94-P-1958.

Suffolk. March 15, 1996. - December 4, 1996.

Present: GREENBERG, LAURENCE, & FLANNERY, JJ.

*Evidence,* Relevancy and materiality, Insurance. *Consumer Protection Act,*
Insurance, Damages, Interest, Demand letter. *Statute,* Construction.
*Damages,* Consumer protection case, Interest.

At the trial of an action brought by an injured party under G. L. c. 93A
and G. L. c. 176D against an insurer for unfair and deceptive practices
in handling the insured's claim, error, if any, in the judge's exclusion on
relevance grounds of proffered evidence of certain policy exclusions that
allegedly would have relieved the insurer of liability was harmless,
where the insurer made no plausible showing that the judge might have
reached a different result on the merits if he had formally admitted the
evidence. [751-753]
In an action brought by an injured party under G. L. c. 93A and G. L.
c. 176D against an insurer for unfair and deceptive practices in settling
a claim under a policy of motor vehicle insurance, the judge correctly
concluded, upon his finding of a knowing violation of G. L. c. 93A, that
the actual damages subject to multiplication consisted of the amount of
the policy limit plus interest accrued until entry of judgment. [753-756]
In an action for violation of G. L. c. 93A, § 9(1), and G. L. c. 176D,
§ 3(9)(*f*), the plaintiff's demand letter was not defective for failure to
specifically allege a violation of subsection (*f*). [756]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 17, 1991.

The case was heard by *Peter M. Lauriat, J.*

*Mark E. Cohen* (*Stephen Rosenberg* with him) for the de-
fendant.

*Thomas M. Bond* for the plaintiff.

FLANNERY, J. We summarize the trial judge's findings. On
February 24, 1989, the plaintiff, Fred Cohen, was injured
while unloading merchandise from a van under circumstances
which gave rise to his claim against the owner of the van.

The van bore Massachusetts registration number 248413 and was registered to Accessory Group, Ltd. (AGL). Cohen believed that the van was insured under the defendant Liberty Mutual Insurance Company's (Liberty), policy number AMI 313 451899 018. On April 25, 1989, Cohen's attorney notified AGL of Cohen's injury and claim. AGL did not respond. Subsequently, in September, October, and November 1989, Cohen's attorney mailed and faxed copies of the claim notice to Liberty. Cohen's attorney also spoke to two Liberty representatives. Liberty, however, did not respond.

On December 8, 1989, Liberty searched the Registry of Motor Vehicles database for the title corresponding to registration number 248413. The Registry found no match. On December 21, 1989, Liberty made a second search of the Registry. Again, the Registry found no match. On December 22, 1989, Liberty made a third search of the Registry. This time, the Registry reported that the number matched that assigned to a van bearing vehicle identification number 1FDKE37*H*1GHB67479 (emphasis supplied), which was owned by AGL and insured by Liberty.

On December 11, 1989, Cohen filed an action against AGL in the Essex County Superior Court, seeking damages for his injuries. Although Cohen served process on AGL, it failed to answer or otherwise respond to Cohen's complaint. On February 23, 1990, the Superior Court defaulted AGL. On March 30, 1990, Cohen's attorney notified Liberty, pursuant to G. L. c. 231, § 58A, of an assessment of damages hearing scheduled for April 9, 1990. Liberty did not appear at the hearing or respond otherwise. Upon determining that notice had been sent to Liberty in compliance with G. L. c. 231, § 58A, the Superior Court judge entered judgment in Cohen's favor awarding him $90,000 in damages, $3,570 in prejudgment interest, and the costs of the action. Neither AGL nor Liberty appealed from or moved to reopen or vacate that judgment.

On April 25, 1990, Cohen or his attorney notified Liberty of the default judgment and assessment of damages. Liberty stated that it still questioned its coverage of Cohen's claim, but failed to respond any further.

On May 31, 1990, Cohen obtained an execution on the judgment from the Essex County Superior Court, and on June 5, 1990, the execution was served on AGL in care of

Liberty. A Liberty representative called Cohen's attorney and stated that she would determine if there was coverage for Cohen's claim.

On June 11, 1990, Liberty requested information from the Rizzo Insurance Agency of Revere (Rizzo) concerning insurance coverage on a vehicle bearing Massachusetts registration number 248413. On August 7, 1990, Rizzo sent Liberty a copy of an application for Massachusetts motor vehicle insurance dated November 19, 1986, which Rizzo accepted on behalf of Liberty from Leonard Grossman on a Ford van bearing vehicle identification number 1FDKE37*B*1GHB67479 (emphasis supplied).[1] Rizzo also sent Liberty a copy of the November 19, 1986, Registry of Motor Vehicles application for title and application for registration (Form RMV-1) on the same van, made out in the name of AGL and endorsed by Rizzo as a Liberty broker. Upon receiving these documents, Liberty obtained Rizzo's file on Leonard Grossman. Despite having this information, Liberty still did not respond to Cohen's claim.

On October 26, 1990, not having heard from Liberty, Cohen's attorney sent Liberty a demand letter under G. L. c. 93A and G. L. c. 176D, alleging unfair and deceptive practices in its handling of Cohen's claim against AGL and demanding immediate payment of the claim. Liberty did not respond to Cohen's demand letter. On January 17, 1991, Cohen filed this action in Suffolk Superior Court against AGL and Liberty alleging violations of c. 93A and c. 176D. Liberty admitted that it was the "named insurance company under policy number AMI 313 451899 018" and that on February 24, 1989, that policy number applied to a Ford van bearing Massachusetts registration number 248413.

In August of 1991, Liberty at last concluded that the van involved in Cohen's accident was a covered vehicle under AGL's insurance policy with Liberty. Accordingly, Liberty resolved the coverage issue in favor of Cohen. Liberty offered Cohen the $20,000 limit on AGL's policy. Cohen rejected the offer.

---

[1]The eighth character "B" in this vehicle identification number differs from the eighth character "H" in the vehicle identification number found in the Registry of Motor Vehicles database search of December 22, 1989. See *supra* at 749. The trial judge attached no significance to this discrepancy; nor do we.

Following a jury-waived trial, a Superior Court judge concluded that Liberty violated G. L. c. 93A, § 9(1), and G. L. c. 176D, § 3(9)(*f*). Under c. 93A, § 9(3), the judge determined actual damages to be the $20,000 limit of the policy together with the interest on that amount from August 7, 1990, to the date of entry of judgment. Additionally, having found Liberty's violation to be knowing, the judge trebled the $20,000 and the interest pursuant to c. 93A, § 9(3). The judge also awarded Cohen $9,500 in attorney's fees and the costs of the action. Liberty appealed and Cohen cross-appealed. We affirm.

1. *Liberty's policy exclusions.* During trial, Liberty attempted to introduce evidence showing that several policy exclusions relieved it of its obligation to indemnify AGL for Cohen's claim. The trial judge, however, excluded the evidence concluding that it was irrelevant to the c. 93A and c. 176D action. Moreover, in his decision, the judge stated that Liberty's defenses were "barred due to untimeliness. Not only did Liberty fail to appear and/or defend Cohen's action in the Essex County Superior Court, but Liberty also failed to file a motion to vacate that judgment or reopen that case." Liberty contends that the judge erred in excluding this evidence.

The trial judge excluded the evidence as being untimely raised. From the explanatory note in his decision, it appears that he viewed the evidence as raising collateral issues irrelevant to the c. 93A action.[2] Determining relevancy is within the substantial discretion of the trial judge. *G.E.B.* v. *S.R.W.*, 422 Mass. 158, 167 (1996), citing *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984). "Evidence is relevant if it has a 'rational tendency to prove an issue in the case.' " *G.E.B.* v. *S.R.W.*, *supra* at 169, quoting from *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 83 (1989). If evidence throws light on an issue, it is admissible. *Commonwealth* v. *Palladino*, 346

[2]The judge also suggested that the proper procedure for raising the applicability of the policy exclusions would have been for Liberty to have moved to reopen or vacate the Essex County judgment. Although whether an insurer in Liberty's position could have or should have attempted to reopen or move to vacate the default judgment poses an intriguing issue of procedural law, see generally Annot., Liability Insurer's Right to Open or Set Aside, or Contest Matters Relating to Merits of Judgment Against Insured, Entered in Action in Which Insurer Did Not Appear or Defend, 27 A.L.R. 3d 350 (1969), we need not address that issue here.

Mass. 720, 726 (1964). Here, Liberty posits that the evidence concerning its policy exclusions would have shown that its liability was not reasonably clear. Although this evidence is of marginal significance, we cannot say that it was irrelevant. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 351 (1990) (stating that "[e]vidence need not establish directly the proposition sought; it must only provide a link in the chain of proof").

A trial judge's erroneous exclusion of evidence does not necessitate reversal on appeal unless it "injuriously affect[s] the substantial rights" of a party. G. L. c. 231, § 119, as inserted by St. 1973, c. 1114, § 202. The party seeking reversal of a trial judge's evidentiary rulings bears the burden of demonstrating prejudice. *G.E.B.* v. *S.R.W.*, *supra* at 169. Establishing prejudicial error in the exclusion of evidence requires the proponent of the excluded evidence to make "a plausible showing that the trier of fact might have reached a different result if the evidence had been before it. Thus the erroneous exclusion of relevant evidence is reversible error unless, on the record, the appellate court can say with substantial confidence that the error would not have made a material difference." *DeJesus* v. *Yogel*, 404 Mass. 44, 48-49 (1989). In this case, therefore, we must decide whether Liberty makes a plausible showing that the trial judge might not have found a violation of c. 176D had he not excluded the evidence concerning the policy defenses.

In support of its argument that the error was prejudicial, Liberty asserts that had the judge considered the policy exclusion evidence, he would have ruled "that there was a legitimate question concerning whether Liberty had a duty to defend or indemnify AGL against the *Cohen* lawsuit." We disagree.

Upon reviewing the record in "a commonsense way," *id.* at 48, we can say with substantial confidence that admission of the evidence concerning Liberty's policy exclusions would not have made a material difference in the trial's outcome. Despite the judge's evidentiary ruling at trial, the substance of Liberty's arguments concerning its policy defenses was presented to him through Liberty's request for findings of fact and rulings of law, Liberty's proposed amended findings of fact, Liberty's motion to dismiss at the close of all the evidence, and Liberty's motion for reconsideration or a new

trial. Given that this was a bench trial before an experienced trial judge and the record before that judge was replete with references to, and discussions of, Liberty's policy exclusions, we conclude that Liberty has not made a plausible showing that the trial judge might have reached a different result if the excluded evidence had been formally admitted at trial. Accordingly, we conclude that any error was harmless.

2. *Chapter 93A damages.* Concluding that Liberty violated c. 93A, the judge awarded Cohen actual damages consisting of the $20,000 limit of the policy and the interest on that amount accruing from August 7, 1990, until the entry of judgment in the c. 93A action. Additionally, having determined that Liberty knowingly violated c. 93A, the judge trebled both the $20,000 and the accrued interest.

Liberty now asserts that the judge erred in awarding treble damages. Moreover, even if treble damages were warranted, Liberty contends, the actual damages to be multiplied consisted only of the interest on the $20,000 accruing between August 7, 1990, and April 1992. Cohen cross-appeals, urging us to conclude that the trial judge should have trebled the $90,000 judgment awarded in his lawsuit against AGL.

The 1989 amendment to c. 93A, § 9(3), provides that "the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim." G. L. c. 93A, § 9(3), as amended by St. 1989, c. 580, § 1. When read in the context of c. 93A and the case law interpreting § 9(3), it is unclear what was meant by the phrase "all claims arising out of the same and underlying transaction or occurrence." One interpretation is that multiplication only applies to c. 93A claims. Another interpretation is that the phrase literally encompasses judgments on "all claims" regardless of a claim's causal connection to a c. 93A violation. When a statute is "capable of being understood by reasonably well-informed persons in two or more different senses," it is ambiguous. 2A Singer, Sutherland Statutory Construction § 45.02, at 6 (5th ed. 1992). We, therefore, look to the amendment's legislative history for guidance. *Singer Friedlander Corp.* v. *State Lottery Commn.,* 423 Mass. 562, 564-565 (1996).

There is little from which we can glean the Legislature's

intent concerning the 1989 amendment.[3] Commentators
concur, however, that at a minimum it was intended as a re-
sponse to our decision in *Wallace* v. *American Mfrs. Mut.
Ins. Co.*, 22 Mass. App. Ct. 938 (1986). See generally Hailey,
New Incentive for Insurers to Settle Claims Reasonably and
Promptly, 34 Boston B.J. 16 (Sept./Oct. 1990) (discussing the
legislative history surrounding the adoption of the 1989
amendment); Boyle, The Elimination of Causation in 93A
Actions Against Insurers, 35 Boston B.J. 14 (Jan./Feb. 1991)
(same). In *Wallace*, the trial court found that an insurer had
failed to settle promptly a theft claim under an automobile
policy. *Id.* at 939. The trial judge determined actual damages
to be the value of the motor vehicle stated in the policy plus
the policy limit for the cost of renting a substitute vehicle.
*Ibid.* The trial judge doubled this amount. *Ibid.* We reversed,
holding that the actual damages subject to multiplication
consisted only of the interest accruing on the claim from the
date of the insurer's failure to settle until the date of judg-
ment. *Id.* at 939-940.

Contrary to the plaintiff's argument,[4] we do not believe
that the Legislature intended the 1989 amendment to abolish
the traditional requirement, articulated in *Wallace,* that a
c. 93A claimant must show a causal connection between the
defendant's wrongful conduct under c. 93A and the claimant's
damages and also that the damages were foreseeable as a
result of the defendant's breach of c. 93A. *Wallace* v. *Ameri-
can Mfrs. Mut. Ins. Co., supra* at 939, quoting from *Shapiro*
v. *Public Serv. Mut. Ins. Co.*, 19 Mass. App. Ct. 648, 657

---

[3]The parties dispute the proper interpretation of the 1989 amendment.
Yet, they neither provide us with nor point us toward materials concerning
the amendment's adoption. Our own research reveals that the official rec-
ord is devoid of any materials evidencing the Legislature's intent in adopt-
ing the 1989 amendment. We note the existence of at least one "fact sheet"
prepared by the amendment's sponsor, Representative William B. Vernon.
See Boyle, The Elimination of Causation in 93A Actions Against Insurers,
35 Boston B.J. 14 (Jan./Feb. 1991). This "fact sheet," however, was not at-
tached to the house bill (H.B. 6014) or included with the legislative packet
on file in the State Archives. Because it is unclear what consideration, if
any, was given to this unofficial document by the Legislature, we do not
consider it here.

[4]The plaintiff relies on the discussion of the 1989 amendment contained
in *Brandley* v. *United States Fidelity & Guar. Co.*, 819 F. Supp. 101 (D.
Mass. 1993). Because that opinion was vacated and withdrawn by the
District Court on August 10, 1993, the plaintiff's reliance on it is misplaced.

(1985). Rather, a reasonable reading of the 1989 amendment suggests that the mischief or imperfection in *Wallace* that the Legislature intended to remedy was multiplication of only the *accrued interest* on the plaintiff's damages under his insurance policy rather than multiplication of both the *damages* and the *accrued interest.*

This reading is supported by *Schwartz* v. *Rose,* 418 Mass. 41, 48 (1994). In *Schwartz,* the Supreme Judicial Court concluded that the plaintiff "suffered" certain damages "because of [the defendants'] wrongdoing" and that this was "precisely the type of damage . . . subject to multiplication . . . under c. 93A." *Ibid.,* citing *Bonofiglio* v. *Commercial Union Ins. Co.,* 411 Mass. 31, 37-38 (1991), *S.C.,* 412 Mass. 612 (1992). We read *Schwartz* to imply that a causal connection between the defendant's wrongdoing and the resulting damages is still a part of c. 93A calculus. See *Polaroid Corp.* v. *Travelers Indem. Co.,* 414 Mass. 747, 763-764 (1993); see also Hailey, *supra* at 18 (stating that the 1989 amendment did not remove the causation requirement and that the damages flowing from the defendant's wrongful conduct are subject to multiplication). Based on the information at hand, we conclude that the 1989 amendment did not abolish the need for a plaintiff under c. 93A to show a causal connection between a defendant's wrongful conduct and the resulting damages, nor was the amendment meant to do anything more than modify our holding in *Wallace* that only the interest and not the underlying damages, was subject to multiplication.[5] With these observations in mind, we turn to the trial judge's determination and multiplication of the actual damages.

The trial judge correctly defined actual damages to be those losses which were the foreseeable consequence of Liberty's unfair or deceptive conduct after it learned of the RMV-1 form on August 7, 1990.[6] *Haddad* v. *Gonzalez,* 410 Mass. 855, 867 (1991). Consequently, we agree with the trial judge

---

[5]Because the parties have not fully briefed the issues concerning the 1989 amendment, we limit our analysis to this case and its facts.

[6]Liberty's argument that its liability did not become "reasonably clear" when it learned of the RMV-1 form on August 7, 1990, because the estoppel provision of G. L. c. 90, § 34B, is an obscure statutory provision and because the plaintiff had a duty to notify Liberty of its reliance on the statute is meritless. Additionally, we disagree with Liberty's contention that § 34B's estoppel only applies to compulsory coverage, which in this case would be $10,000. The purpose of compulsory coverage is to provide injured

that Liberty cannot be held responsible for a judgment exceeding the policy limit which was rendered in April, 1990, when Liberty held a good faith belief that it was under no obligation to the insured. Liberty's wrongful conduct did not cause the $90,000 judgment to be entered against AGL. Therefore, we conclude, as did the trial judge, that the actual damages caused by Liberty's wrongful conduct are the $20,000 policy limit plus the interest on that amount accrued between August 7, 1990, and the entry of judgment.

Moreover, we agree that Liberty knowingly violated c. 93A and is, therefore, subject to an award of multiple damages against it. G. L. c. 93A, § 9(3). *Bonfiglio, supra* at 36. As stated by the trial judge, "Liberty had reason to know of its liability for Cohen's claim under its insurance policy with AGL several months prior to its receipt of Cohen's G. L. c. 93A demand letter, yet it failed to settle Cohen's claim or tender its policy at that time or for more than a year thereafter." Accordingly, we conclude that the plaintiff is entitled to a judgment for treble the amount of (1) his actual damages of $20,000 and (2) interest on that amount between August 7, 1990, and the date of entry of judgment in this action.

3. *The c. 93A demand letter.* Liberty also contends that the trial judge erred in holding it liable under G. L. c. 176D, § 3(9)(*f*), because the plaintiff's c. 93A demand letter did not specifically allege that Liberty violated subsection (*f*). We do not read c. 93A to require this degree or kind of specificity. *Piccuirro* v. *Gaitenby*, 20 Mass. App. Ct. 286, 292 (1985) (concluding that a demand letter generally alleging a violation of c. 93A was sufficient where the letter described the underlying facts with reasonable specificity).[7]

*Judgment affirmed.*

---

persons with a minimum of coverage. Alperin & Chase, Consumer Rights and Remedies § 365 (1979). Additional optional bodily injury coverage merely increases the potential amount an injured party can recover while offering the same protection as compulsory coverage. *Id.* at § 368. Where, as here, there is additional optional bodily injury coverage, construing § 34B's estoppel provision to *limit* coverage would conflict with the purpose of the statute.

[7]Cohen's request for appellate attorney's fees is denied.