DANIEL LORD *vs.* COMMERCIAL UNION INSURANCE COMPANY[1]
& another.[2]

No. 00-P-1655.

Norfolk. June 12, 2003. - January 8, 2004.

Present: COWIN, MILLS, & GREEN, JJ.

*Contract,* Insurance. *Motor Vehicle,* Insurance. *Insurance,* Motor vehicle insurance, Property damage, Notice. *Consumer Protection Act,* Insurance, Demand letter, Attorney's fees, Damages, Class action. *Damages,* Consumer protection case, Attorney's fees. *Practice, Civil,* Class action.

A trial court judge correctly concluded that, where a policy of insurance for a used automobile was in suspension due to the plaintiff insured's nonpayment of premiums, the defendant insurer violated G. L. c. 93A, § 2, by failing to give the plaintiff an additional prescribed notice of suspension of coverage on the ground that the insured vehicle had not been inspected within seven days of the effective date of the policy. [314-316]

Where the defendant in a consumer protection action failed to bring to the attention of the trial judge an alleged defect in the plaintiff's demand letter, any defense based thereon was waived on appeal. [316-317]

This court concluded, based on a review of the relevant statutory provisions and judicial interpretations governing the award of nominal damages and attorney's fees in an action brought under G. L. c. 93A, § 9, that such awards are not available absent a finding of at least some causation of injury; thus, in a consumer protection action, where a trial court judge expressly found that a defendant insurer's unfair and deceptive act (failure to send a timely notice of suspension of coverage) was not the cause of the plaintiff insured's loss, the plaintiff was not entitled to an award of statutory damages or attorney's fees. [317-325]

This court found no abuse of discretion either in the refusal by a motion judge to certify a class in a consumer protection action, or in the denial by the trial judge of partial reconsideration thereof. [325]

A trial court judge was justified in denying injunctive relief to a plaintiff alleging that the defendant insurer had violated the notice requirements of 211 Code Mass. Regs. § 94.09(2) (1993), where the relief sought by the plaintiff would have directly conflicted with the provisions of that regulation. [326]

[1]Doing business as Commercial Union Homeland Insurance Company.

[2]Westwood Insurance Agency of Wellesley, Inc. All claims against this defendant were decided in its favor in the trial court and are not at issue on this appeal.

CIVIL ACTIONS commenced in the Quincy Division of the District Court Department on December 15, 1994, and in the Superior Court Department on December 19, 1995.

After transfer of the District Court action to the Superior Court and consolidation of the actions, a motion for class certification was heard by *Allan van Gestel*, J., and the case was tried before *Elizabeth Butler*, J.

*Theresa Lord Piatelli* (*Francis X. Collins* with her) for the plaintiff.

*Richard L. Neumeier* for the defendant.

COWIN, J. We consider cross appeals from a judgment of the Superior Court awarding the plaintiff $25, together with attorney's fees of $9,000 and costs of $2,170, following the judge's determination that the defendant, an insurer of used automobiles with respect to property damage, had violated G. L. c. 93A, § 2, by failing to give the plaintiff timely notice that his coverage had been suspended because the insured vehicle had not been inspected within seven days of the effective date of the policy. The plaintiff challenges the refusal of both a motion judge and the trial judge to certify the case as a class action; the denial of his prayer for a permanent injunction; and the amount of attorney's fees awarded. The defendant asserts that it was error to determine that it had violated applicable notice requirements; even assuming there was such a violation, the violation was not the cause of the plaintiff's loss; and the plaintiff's claim on the subject should not have been entertained in any event because it was not set forth in the plaintiff's demand letter submitted pursuant to G. L. c. 93A, § 9.

We conclude that the trial judge correctly decided that the defendant violated a legal obligation to give timely notice of the suspension of the plaintiff's property damage coverage. An alleged defect in the c. 93A demand letter, if any, was apparently not brought to the attention of the trial judge, and accordingly, any defense based thereon was waived. However, we agree with the defendant that the finding that absence of notice was not the cause of the plaintiff's loss precludes the award of $25 in damages. Because the violation did not cause injury to the plaintiff, he therefore failed in his c. 93A claim, and there should have been no award of attorney's fees. The trial judge was

justified in denying injunctive relief. There was no abuse of discretion with respect to the denial of class certification. Accordingly, the judgments must be reversed, and judgments shall enter for the defendant.

1. *Background.* There is no dispute regarding the underlying material facts or the relevant prior proceedings. The plaintiff obtained from the defendant property damage and other insurance coverage with respect to a 1986 Nissan automobile. He failed to pay a premium that was due November 5, 1991. Pursuant to a policy of the defendant in effect at that time, the plaintiff's property damage policy was placed "in suspension." On November 14, 1991, the plaintiff transferred the policy to a used 1987 Nissan. Pursuant to G. L. c. 175, § 113S, and 211 Code Mass. Regs. §§ 94.00 (1993), the plaintiff was required to have the 1987 Nissan inspected by a representative of the insurer within seven days after the effective date of coverage (i.e., by November 21, 1991). The plaintiff signed an acknowledgment of this obligation.

On November 18, 1991, the defendant sent to the plaintiff written notice that the policy would be canceled for nonpayment of the premium due November 5, 1991, such cancellation to be effective December 12, 1991, unless the plaintiff paid the premium by that date. By November 21, 1991, however, the plaintiff had not obtained the required pre-insurance inspection, and, pursuant to the applicable regulation, the defendant, on November 22, 1991, suspended coverage. When physical damage coverage is suspended for this reason, 211 Code Mass. Regs. § 94.09(2) (1993) requires that the insurer "shall, between the 21st and 30th calendar day after the effective date of the coverage, mail to the applicant . . . a prescribed NOTICE OF SUSPENSION OF PHYSICAL DAMAGE COVERAGE." Because the transferred coverage took effect November 14, 1991, the notice of suspension in this case should have been sent between December 5, 1991, and December 14, 1991. Ordinarily, such notice would have been sent on December 13, 1991, it being the defendant's practice to send the notice on the twenty-ninth day after the policy's effective date. However, in the present case, that notice was not sent because of the defendant's practice of sending no additional notices of any

kind once a policy had been placed "in suspension." Consequently, while the plaintiff had notice that his policy would be canceled altogether if the premium were not paid by December 12, 1991, he received no additional notice, other than the original document (acknowledged by him) disclosing that an inspection within seven days was required and that failure to obtain a timely inspection would also result in a suspension of coverage.

On December 10, 1991, the plaintiff forwarded the overdue premium to the defendant. On December 13, 1991, the defendant deposited the plaintiff's check and forwarded to the plaintiff two notices: a notice of cancellation of coverage effective December 12, 1991, for nonpayment of the premium and a notice of reinstatement of coverage.[3] On December 19, 1991, the plaintiff's 1987 Nissan sustained property damage of $3,000 in an accident. The plaintiff notified his insurance agent of the accident on the same date, also informing the agent that he had not had the vehicle inspected prior thereto. On December 22, 1991, the defendant forwarded to the plaintiff a notice that physical damage coverage on the 1987 Nissan had been suspended effective November 22, 1991, for failure to comply with the inspection requirement. When the plaintiff subsequently asserted a claim for the property damage sustained by the vehicle, the defendant rejected the claim on the ground that the insurance was not in effect at the time the accident occurred.

The plaintiff thereafter mailed to the defendant a "written demand for relief" pursuant to G. L. c. 93A, § 9(3). The demand letter alleged the commission by the defendant of four unfair or deceptive acts or practices, specifically: (1) the defendant's refusal to pay for the property damage to the plaintiff's motor vehicle; (2) the retroactive cancellation of physical damage and collision coverage; (3) the sending of the notice of cancellation on a Sunday; and (4) fraudulently representing to the plaintiff that physical damage and collision coverage had been reinstated following payment of the overdue premium. When the defendant declined to settle, the plaintiff commenced an action in the District Court department alleging

---

[3]The record does not explain why the defendant forwarded two conflicting notices in these circumstances.

both breach of contract and violations of G. L. c. 93A and G. L. c. 176D.[4] In a separate action in the Superior Court, the plaintiff sought declaratory and injunctive relief, as well as damages, on behalf of a class consisting of allegedly similarly situated policy holders negatively affected by the defendant's practices regarding the sending of notices under 211 Code Mass. Regs. § 94.09(2).

By order of the chief justice for administration and management, the District Court case was transferred to the Superior Court, and the cases were consolidated for trial. The plaintiff's request for class certification was denied; the judge, however, did permit the matter to proceed as a "test case." See *Carpenter* v. *Suffolk Franklin Sav. Bank*, 370 Mass. 314, 322 (1976).[5] The case was then tried before a second judge and a jury, with the plaintiff's claim for breach of contract being presented to the jury, while his claims under G. L. c. 93A and G. L. c. 176D were tried to the judge. The jury answered in the negative a special question as follows: "Was [the plaintiff's] failure to have the 1987 motor vehicle inspected prior to the accident of December 19, 1991, due to the fault of the insurer?" Acting on the claims under G. L. c. 93A and G. L. c. 176D, the judge determined that the defendant had violated the applicable regulation regarding notice and that such failure constituted a violation of the unfair practices statutes. She found, as had the jury, that the violation was not the cause of the plaintiff's loss. She awarded the plaintiff $25 in damages[6]; refused to reconsider the question of class certification; denied the plaintiff's prayer

[4]Westwood Insurance Agency of Wellesley, Inc., was joined as a party defendant. See note 2, *supra*.

[5]Following the judge's refusal to certify the case as a class action, the parties stipulated that it would be tried as a test case. A test case is one in which the defendant agrees that, should the plaintiff prevail, other plaintiffs situated similarly to the test case plaintiff may obtain similar relief from the defendant. See *ibid.* The statute of limitations is tolled while the test case is being decided. See *Barry* v. *Dymo Graphic Sys., Inc.*, 394 Mass. 830, 833-835 (1985); *Katz* v. *Carte Blanche Corp.*, 496 F.2d 747, 761, cert. denied, 419 U.S. 885 (1974). Here, the defendant agreed, and the judgments so provided, that if damages were awarded to the plaintiff, damages would also be awarded to all other similarly situated insureds from 1991 forward.

[6]The judge originally awarded $50 in damages, doubling the statutory minimum of $25 because she found that the defendant's violation was "knowing." On the defendant's motion for partial reconsideration on the

for a permanent injunction requiring the defendant to mail suspension notices on the twenty-first day following the effective date of coverage; and awarded the plaintiff $9,000 in attorney's fees and $2,170 in costs (far less than the $43,556.50 in fees and $2,528.94 in costs for which the plaintiff had applied).

2. *Discussion.* a. *Late notice of suspension of physical damage coverage.* We turn first to the merits of the trial judge's determination that the defendant's failure to give a timely prescribed notice of suspension of physical damage coverage because the policy was "in suspension" for nonpayment of premiums violated statutory and regulatory requirements and therefore constituted a violation of G. L. c. 93A.[7]

By statute, see G. L. c. 175, § 113S(*b*), certain motor vehicles, including that owned by the plaintiff, cannot be insured for collision and certain other types of coverage unless they have been inspected by the insurer. The commissioner of insurance is authorized to promulgate regulations to govern the inspection process. See G. L. c. 175, § 113S(*c*). Pursuant to that authorization, the commissioner provided by regulation that the required inspection could in certain circumstances take place within seven days of coverage. See 211 Code Mass. Regs. § 94.07(1) (1993). However, should such inspection not be timely performed, "motor vehicle physical damage coverage on the motor vehicle shall be suspended at 12:01 a.m. of the day following the seventh calendar day [after what would otherwise have been the effective date of coverage], and such suspension shall continue until the inspection is effected." 211 Code Mass. Regs. § 94.09(1) (1993). "Whenever physical damage coverage is suspended, the insurer shall, between the [twenty-first] and [thirtieth] calendar day after the effective date of the coverage, mail to the applicant, the producer of record, and any lienholders

---

ground that the statutory damages were not subject to multiplication, see *Leardi* v. *Brown*, 394 Mass. 151, 162-163 (1985), the judge reduced the award to $25.

[7]Violation of the provisions of 211 Code Mass. Regs. §§ 94.00 is a per se violation of G. L. c. 176D, § 3, 211 Code Mass. Regs. § 94.12(1) (1993), which in turn is a per se violation of G. L. c. 93A, § 2, under G. L. c. 93A, § 9(1). See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 754 (1993).

a prescribed NOTICE OF SUSPENSION OF PHYSICAL DAMAGE COVERAGE." 211 Code Mass. Regs. § 94.09(2).

The defendant ordinarily sends the notice required by the regulations on the twenty-ninth day after the effective date of coverage in order to minimize the potential for confusion if an inspection were done late and an inspection report crossed in the mail with a suspension notice. In the present case, the defendant did not forward any suspension notice between the twenty-first and thirtieth day following the effective date of coverage. The withholding of the suspension notice conformed with the defendant's internal policy that no notices were to be sent in connection with policies that were "in suspension" for nonpayment of the premium. The defendant justifies this policy on the theory that cancellation of coverage requires strict compliance with cancellation requirements, see G. L. c. 175, § 113A; *Fields* v. *Parsons*, 353 Mass. 706, 707 (1968), and that the sending of notices while coverage was in suspension for nonpayment of the premium could lead to a conclusion that strict adherence to cancellation requirements had not been achieved, and that coverage was therefore still in effect.

We are unable to locate support for the defendant's proposition either in the statute governing the cancellation of policies or in the regulations regarding preinsurance inspections. The regulations certainly do not invite such an interpretation. Indeed, 211 Code Mass. Regs. § 94.09(2) mandates the sending of a notice of suspension and establishes the time frame within which it must be sent, without any exception, express or implied. Nothing in G. L. c. 175, § 113A, requires or authorizes an insurer to disregard a valid regulation on another subject. That regulation was presumably promulgated with an awareness of the statute and decisions relating to cancellations, and the regulation has not been attacked by the defendant as beyond the authority of the commissioner.

The defendant's argument also fails to convince because of the conditional nature of the cancellation of coverage for nonpayment of the premium. Had coverage of the plaintiff's motor vehicle actually terminated permanently when the required premium was not paid, the relationship between insured and insurer would indeed have ended and subsequent notices

would be superfluous. However, that is not what occurred. On November 18, 1991, the defendant forwarded to the plaintiff a notice that the policy would be canceled effective December 12, 1991, unless the delinquent premium was paid by that date. Thus, the coverage remained fully in effect during what was essentially a "grace period," and the plaintiff caused the policy to remain in effect thereafter by paying the premium as demanded. Thus, there was in fact no date on which the policy was not in effect for nonpayment of the premium, thereby rendering the defendant's practice of not sending the notice of suspension for failure to obtain a preinsurance inspection of the vehicle potentially damaging to the plaintiff and violative of the regulatory scheme. The defendant's internal choice to label the coverage as "in suspension"[8] during the grace period does not justify a failure to abide by the notice requirement. If the defendant is concerned that some confusion may arise when there is both threatened cancellation for nonpayment of a premium and a suspension for failure to inspect, the respective notices can be drafted in ways that will clarify the policy's status.

b. *The chapter 93A demand letter.* The defendant argues that, regardless of the merits, the trial judge should not have reached the question of alleged lack of compliance with the notice regulation because the plaintiff did not set forth the allegation in his written demand for relief under G. L. c. 93A, § 9(3). At the outset, it is not so clear that the plaintiff's demand letter did not embrace the issue. The letter identifies as an unfair or deceptive act or practice the defendant's refusal to honor the property damage claim because physical damage coverage had been suspended. This appears to us to implicate all aspects of the suspension of coverage, including the defendant's failure to send the notice of suspension mandated by 211 Code Mass. Regs. § 94.09(2). See *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748, 756 (1996).

Be that as it may, we need not decide the case on the basis of

---

[8]The defendant's characterization of the policy as "in suspension" is not even accurate. Had the plaintiff's vehicle incurred damage between November 18, 1991, and December 11, 1991, and had the coverage not been suspended because of the absence of an inspection, the policy would have been deemed to have been in effect, and the defendant would presumably have paid for the loss.

an interpretation of the demand letter because the defense has been waived by the insurer. The defense was not asserted in the defendant's responsive pleadings and, to the extent that we can tell from the record, was not raised prior to these cross appeals. The requirement of G. L. c. 93A, § 9(3), that the plaintiff forward a demand letter at least thirty days prior to the filing of a complaint alleging a c. 93A violation "is not jurisdictional in the sense that a party cannot waive it." *York* v. *Sullivan*, 369 Mass. 157, 163 (1975). *Fredericks* v. *Rosenblatt*, 40 Mass. App. Ct. 713, 717 (1996).

c. *Chapter 93A damages.* We agree with the defendant that the judge erred in awarding the plaintiff $25 in damages. General Laws c. 93A, § 9(1), as appearing in St. 1979, c. 406, § 1, authorizes, with certain exceptions, the bringing of an action by a person "who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D."[9] Thus, it is clear from the statutory language that, in order to recover, a plaintiff must establish both that an unfair or deceptive act or practice has been committed *and* that the commission of that act or practice has caused him an injury. The plaintiff must show that there was a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception. See *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 800-801 (1976). Responding to a 1989 amendment to G. L. c. 93A, § 9(3), see St. 1989, c. 580, § 1, this court stated that "a causal connection between the defendant's wrongdoing and the resulting damages is still a part of c. 93A calculus." *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. at 755.

Here, the trial judge determined correctly that the defendant's failure to send a timely suspension notice constituted an unfair or deceptive act or practice under G. L. c. 93A, § 2. However, she further found, as did the jury, that the absence of timely notice was not the reason for the plaintiff's failure to have the

---

[9]General Laws c. 176D, § 3(9), defines unfair claim settlement practices in the business of insurance.

vehicle inspected within seven days and, therefore, that the unlawful act or practice was not the cause of the plaintiff's injury. This finding is not challenged by the plaintiff. Having so decided, the judge then stated the following: "Minimal damages are in order, and the court awards them in the amount of $25." Thus, she treated the $25 award as essentially a nominal damages award to which the plaintiff was entitled because he had demonstrated that an unfair or deceptive act or practice had taken place. While the matter is not free from doubt, we believe that the judge misconstrued the provisions of G. L. c. 93A, § 9(3), in this regard, with a meaningful impact on the defendant's liability for attorney's fees. See part d, *infra.*

A brief review of the history of the relevant provisions and judicial interpretations of them may be helpful. Prior to 1979, G. L. c. 93A, § 9(1), created a private right of action in favor of "[a]ny person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of said section two." A counterpart for businessmen appeared in G. L. c. 93A, § 11, which provided that "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two" could sue for relief. Thus, both sections required that, in order to prevail, a plaintiff had to show that the violation had caused him a "loss of money or property, real or personal." See *Baldassari* v. *Public Financial Trust,* 369 Mass. 33, 44-46 (1975).

By St. 1979, c. 406, § 1, the Legislature amended G. L. c. 93A, § 9(1), so that the subsection thereafter provided that "[a]ny person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice

declared to be unlawful by section two or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D" could maintain an action under G. L. c. 93A, § 9. This effected a considerable expansion of the class entitled to bring § 9 complaints. See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983). Thus, the right to sue under § 9 expanded from a class limited to direct purchasers and lessees to any person other than those business persons with standing to sue under § 11. In addition, and of particular importance in the present context, recovery under § 9 now no longer depended on a showing that there had been a "loss of money or property," but instead became available if the plaintiff incurred an "injury." Meanwhile, § 11 was left unchanged with respect both to the class given a right to sue and to the showing required for recovery.

The change in G. L. c. 93A, § 9(1), precipitated the decision in *Leardi* v. *Brown*, 394 Mass. 151, 157-161 (1985). In that case, the Supreme Judicial Court upheld a determination by a Housing Court judge that the defendant landlord had committed unfair or deceptive acts or practices in violation of G. L. c. 93A, § 2, by including in standard apartment leases clauses that might have deceived plaintiff tenants into surrendering legal rights pursuant to the implied warranty of habitability and the State sanitary code. *Id.* at 156-157. It was agreed "that no member of the [plaintiff] class had ever read, and that the landlord had never attempted to enforce, the offending portions of the lease." *Id.* at 154. For this reason, the defendant argued that the plaintiffs had suffered no "injury," see G. L. c. 93A, § 9(1), as a result of the deceptive acts and, accordingly, were entitled to no damages. *Id.* at 157.

In rejecting the defendant's proposition, the court examined the meaning of the term "injury" in this context. *Id.* at 159 ("the result we reach hinges on our interpretation of the word 'injury' "). Noting that "[t]he question before us now is a close one," and that "we have traditionally been zealous in protecting tenants who have shown that their landlords, for whatever reason, fail to fulfil the obligations imposed upon them by

statute and decisional law," the court concluded that the tenant class had been "injured" as that term is used in G. L. c. 93A, § 9(1). *Ibid.* Construing the term "injury" as "the invasion of any legally protected interest of another," quoting from Restatement (Second) of Torts § 7 (1965), the court stated, "[a]ccordingly, under circumstances where there has been an invasion of a legally protected interest, but no harm for which actual damages can be awarded, we conclude that the statute provides for the recovery of minimum damages in the amount of $25." *Id.* at 160.

That treatment suggests a possible construction of G. L. c. 93A, § 9(3) ("if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater") that treats the twenty-five dollar figure as if it were minimal damages to be awarded whenever a violation of G. L. c. 93A, § 2, has been shown, without regard to whether the plaintiff has in fact been harmed by the unfair or deceptive act or practice. Subsequent cases have not done much to clarify the statute's meaning in this regard. In *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 718-719 n.12 (1989), the court stated that "nominal damages of $25 are awarded under § 9 if proof of greater damages is not made." That leaves open the question whether $25 must be awarded even if no damages are proved, or only when there are damages but such damages are less than $25. In the following year, this court decided *DePasquale* v. *Ogden Suffolk Downs, Inc.*, 29 Mass. App. Ct. 658, 663 (1990), wherein we identified as "factual issues to be resolved at a trial" whether the defendant's conduct constituted an unfair or deceptive act or practice and "whether the plaintiff sustained any loss because of it." We continued that "[i]f successful, unless the plaintiff can prove an actual loss or harm in excess of statutory damages, his recovery would be limited to statutory damages of twenty-five dollars plus reasonable attorney's fees." *Ibid.* This again provides no guidance whether the minimum damage figure is available in the absence of proof of any loss or harm at all. Subsequently, in *Haddad* v. *Gonzalez*, 410 Mass. 855, 867 (1991), the Supreme Judicial Court distinguished "actual damages" from minimum damages of $25, which it characterized as "nominal damages,"

stating "[t]his juxtaposition suggests a contrast between compensatory (i.e., actual) and nominal (i.e., twenty-five dollars) damages." We note, however, that the term "nominal damages" does not appear in G. L. c. 93A, § 9(3).

More recently, we have interpreted G. L. c. 93A, § 9(3), to require actual injury or loss before even minimum damages of $25 can be awarded. Where a judge determined that a violation of G. L. c. 176D (and therefore of c. 93A) had occurred, but that the violation had no adverse effect on the plaintiff and no damages should be awarded, we affirmed. See *Abdella* v. *United States Fid. & Guar. Co.*, 47 Mass. App. Ct. 148, 152-153 (1999). No mention of any entitlement of the plaintiff to minimum or nominal damages appears. The opinion cites *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. at 678 ("Even if St. Paul violated G. L. c. 176D, § 3(9)(*d*) and (*f*), the plaintiffs had to be adversely affected by that violation in order to be entitled to recover under G. L. c. 93A, § 9"), as well as *Gurnack* v. *John Hancock Mut. Life Ins. Co.*, 406 Mass. 748, 753 n.5 (1990) ("Under Massachusetts law, the denial of a claim under an insurance policy, following an inadequate claims investigation, would not warrant liability unless the claimant were harmed by that inadequate investigation"). To the same effect, see *Schwartz* v. *Travelers Indem. Co.*, 50 Mass. App. Ct. 672, 676 n.5 (2001), wherein the following is stated: "Plaintiffs would not be allowed to recover on an action [under G. L. c. 93A, § 9,] where they have suffered no harm at all; the case law indicates that some kind of harm is required before damages can be recovered." But contrast *Billingham* v. *Dornemann*, 55 Mass. App. Ct. 166, 175-176 (2002), stating that "any failure to show actual damages would not preclude an award of nominal damages and counsel fees," citing *Leardi* v. *Brown*, 394 Mass. at 160.[10]

We conclude that the Legislature, in enacting and amending G. L. c. 93A, § 9, did not intend to confer on plaintiffs who

---

[10]We note that cases brought under G. L. c. 93A, § 11, regularly emphasize the requirement that a plaintiff, in order to recover, must demonstrate the existence of an unfair or deceptive act or practice, a loss, and the causation of one by the other. See *Massachusetts Farm Bureau Fedn., Inc.* v. *Blue Cross of Mass., Inc.*, 403 Mass. 722, 730 (1989); *Hartford Cas. Ins. Co.* v. *New Hampshire Ins. Co.*, 417 Mass. 115, 125 (1994).

have suffered no harm the right to receive a nominal damage award which will in turn entitle them to a sometimes significant attorney's fee recovery. As described above, G. L. c. 93A, § 9, creates a cause of action in favor of plaintiffs who are injured as a result of an unfair or deceptive act or practice. The plaintiff has the burden of establishing that the defendant's behavior caused him an "injury." This is a precondition for recovery; in its absence, the defendant is entitled to judgment. See *Abdella* v. *United States Fid. & Guar. Co.*, 47 Mass. App. Ct. at 153. The provision in G. L. c. 93A, § 9(3), that refers to minimum damages of $25 states, in relevant part: "[I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater." In order to "find[] for the petitioner," the judge must find that the defendant's action was the cause of some injury inflicted on the claimant. If so, actual damages, but not less than $25, are awarded. If not, there will be no damages because judgment will enter for the defendant. We do not believe that the Legislature intended the $25 figure to be an automatic award whenever an unfair or deceptive act or practice has been identified. While a $25 award may be made when there has been a showing of causation of loss without quantification, compare *Shapiro* v. *Public Serv. Mut. Ins. Co.*, 19 Mass. App. Ct. 648, 657 (1985), it is not available absent a finding of at least some causation of injury. See *Trempe* v. *Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. 448, 457 n.6 (1985) ("We do not read that part of § 9(3) which provides that a prevailing plaintiff shall recover 'the amount of actual damages *or* twenty-five dollars, whichever is greater," [emphasis supplied] as contradictory of the pre-1979 requirement in § 9(1) that the plaintiff must show a loss of money or property. Rather, we construe § 9(3) as providing a plaintiff who established a loss, no matter how small, with a guaranteed recovery of at least $25"). This concept was not altered by the 1979 amendment that permitted recovery for any "injury" rather than for only a loss of money or property.

Here, the judge found expressly that the defendant's failure to send a timely suspension notice was not the cause of the plaintiff's loss. This was not a finding, as in *Shapiro* v. *Public*

*Serv. Mut. Ins. Co.*, 19 Mass. App. Ct. at 657, that a loss had occurred, but that the amount thereof had not been proved; nor was it a finding that a loss had been proved in an amount less than $25. Rather, it was a finding that the plaintiff had suffered no injury attributable to the defendant. In these circumstances, the plaintiff has not made out a case under G. L. c. 93A, § 9, and the defendant is entitled to judgment.

To the extent that *Leardi* v. *Brown*, 394 Mass. at 159-161, may suggest otherwise, we believe that it was intended to be limited to the peculiar facts presented. Indeed, the court itself suggested as much ("We need not, and do not, decide whether we would reach a similar result under G. L. c. 93A, § 9, in other circumstances"), and discouraged the thought that the decision was intended to authorize "vicarious suits by self-constituted private attorneys-general." *Leardi* v. *Brown, supra* at 161, quoting from *Baldassari* v. *Public Financial Trust*, 369 Mass. at 46. Insofar as *Leardi* v. *Brown, supra* at 155-157, dealt with lease provisions that tenants could reasonably construe as limiting the implied warranty of habitability, as well as their rights under the State sanitary code, the court could have determined that the offending clauses brought about a continuing deprivation of statutory rights because the tenants were misled to believe that such rights did not exist. This is quite different from the absence of a single notice in the present case where the plaintiff already knew of the inspection requirement, acknowledged it in writing, and was found to have been the cause of his own loss. We conclude that, at least on this record, the finding that the plaintiff's loss was not attributable to the defendant's violation precludes the award of statutory damages.

d. *Attorney's fees.* The judge awarded the plaintiff $9,000 in attorney's fees and $2,170 in costs. We need not address the plaintiff's contention that the fee award was unfairly low because there should have been no fee award at all.

The applicable fee-shifting provision is found in G. L. c. 93A, § 9(4), which states in part the following: "If the court finds . . . that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said

action." The same language appears in G. L. c. 93A, § 11, governing actions by and against persons engaged in the conduct of any trade or commerce. The language has generated conflicting interpretations. In an early decision of this court, a fee award under § 11 was set aside because the plaintiff had not demonstrated that he had suffered loss as a result of an unfair or deceptive act. See *Levy* v. *Bendetson*, 6 Mass. App. Ct. 558, 566-567 (1978). The court noted that the statute provides for the award of fees and costs "in addition to other relief provided for by this section," and that such "other relief" is available only "[i]f the court finds for the petitioner." *Ibid.*, quoting from G. L. c. 93A, § 11 ("Where, as here, a single plaintiff . . . has been denied any relief under § 11, it would indeed be anomalous to grant him attorneys' fees under that section").

Subsequently, in *Trempe* v. *Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. at 457-458, we noted, in upholding a fee award under G. L. c. 93A, § 9, as amended by St. 1971, c. 241, that "there is a benefit to the public where deception in the marketplace is brought to light (and thereby corrected) by an individual who has been deceived even though his actual damages were not proved." This, and the decision in *Shapiro* v. *Public Serv. Mut. Ins. Co.*, 19 Mass. App. Ct. at 657-658, decided earlier that term, were read by some as suggesting that fees could be awarded on a showing that a deceptive act had occurred even though the plaintiff suffered no loss as a result. That view was rejected by the Supreme Judicial Court in *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. at 718, wherein the court determined, in a § 11 case, that "a plaintiff must be entitled to relief in some other respect in order to be entitled to an award of attorneys' fees. . . . A plaintiff suing under § 11, however, cannot recover attorneys' fees for merely identifying an unfair or deceptive act or practice. Under § 11, that unfair or deceptive conduct must have had some adverse effect upon the plaintiff, even if it is not quantifiable in dollars."

Recognizing that the decision in *Jet Line Servs.* v. *American Employers Ins. Co.*, *supra*, was rendered in connection with a § 11 claim, we conclude that the reasoning is equally applicable to a § 9 case. The language of the respective fee-shifting provisions is identical. The purpose of the actions authorized

both by § 9 and by § 11 is to provide redress to those who, as a result of unfair or deceptive acts or practices, have been injured (§ 9), or have suffered any loss of money or property (§ 11). Consistent with fee-shifting statutes generally, fees are awarded if the plaintiff prevails, but not otherwise. A plaintiff can hardly be said to have prevailed if, given his failure to prove that the defendant's act or practice caused him loss, judgment is entered for the defendant. See *Levy* v. *Bendetson*, 6 Mass. App. Ct. at 566-567. We are not persuaded that it was the Legislature's intention to encourage the bringing of cases by persons without losses who seek to identify unfair or deceptive acts or practices on the part of others, see *Baldassari* v. *Public Financial Trust*, 369 Mass. at 46; *Leardi* v. *Brown*, 394 Mass. at 161, sometimes motivated entirely by the prospect of attorney's fee awards. The public interest is adequately protected by actions commenced by those who have in fact incurred a loss, as well as by the exercise by the elected Attorney General of the authority vested in him under G. L. c. 93A, §§ 4-8.

e. *Other issues.* We discern no abuse of discretion either in the refusal by the motion judge to certify a class or in the denial by the trial judge of partial reconsideration thereof. For the reasons set forth earlier in this opinion, a plaintiff must, in order to prevail, establish that he was injured as a result of an unfair or deceptive act or practice. Given the variety of factual circumstances that will apply in individual cases, class action litigation on the subject may not be feasible. The judges did not abuse their discretion in determining that individual questions of damage and injury predominated, and that a class action was not superior to other available methods for adjudicating the controversies. See Mass.R.Civ.P. 23(b); *Fletcher* v. *Cape Cod Gas Co.*, 394 Mass. 595, 597-598, 603 (1985). Notwithstanding this determination, there is no reason that the parties' stipulation to treat this as a test case should not be enforced to a limited extent. The defendant's practice of not sending required notices to policy holders whose coverage was "in suspension" for nonpayment of premium has been declared a violation of G. L. c. 93A, § 2, and other similarly situated plaintiffs are entitled to rely on that. Whether such plaintiffs have incurred losses as a result of the practice, and, if so, the extent of such losses, must be left to separate proceedings.

Finally, the trial judge was justified in denying the plaintiff's request for injunctive relief. While the plaintiff was successful in establishing that the defendant had violated the notice requirements of 211 Code Mass. Regs. § 94.09(2), the relief he sought was not designed to prohibit future violations of this kind. Rather, he sought affirmative injunctive relief directing that the defendant make use of a computer program that would result in the mailing of notices of suspension of physical damage coverage immediately after the twenty-first day after the effective date of coverage. The injunction, if entered, would directly conflict with the provision of 211 Code Mass. Regs. § 94.09(2) that permits the insurer to mail such notices at any time between the twenty-first and the thirtieth day after the effective date of coverage, and the judge was correct in declining to grant it.

3. *Disposition.* That portion of the judgment referring to no. 95-2721 is reversed as to count IV; reversed as to the order for payment of damages to all similarly situated plaintiffs; and affirmed as to the remaining counts. The denial of the plaintiff's motion for a permanent injunction is affirmed.

That portion of the judgment referring to no. 96-930 is affirmed as to count I; reversed as to count II; reversed as to the order for the payment of damages to similarly situated plaintiffs; and affirmed as to the remaining counts. The order allowing for attorney's fees and costs is vacated.

*So ordered.*