CAROLE G. SIEGEL *vs.* BERKSHIRE LIFE INSURANCE COMPANY.

No. 98-P-1912.

Berkshire. April 10, 2000. - June 4, 2001.

Present: PERRETTA, LAURENCE, & DUFFLY, JJ.

*Insurance,* Life insurance, Construction of policy. *Assignment. Words,* "Consent," "Release."

This court concluded that a reasonable reading of the applicable terms of a policy of life insurance required that an absolute assignment of rights thereunder could be made only with the "consent" of the outstanding collateral assignees [748-749]; further, the court concluded that the "consent" requirement could be fulfilled by the collateral assignees' execution of an agreement acknowledging the absolute assignee's ownership of the policy subject to their outstanding collateral agreements, and did not require that they execute a release of their rights under the policy prior to the absolute assignment [749].

CIVIL ACTION commenced in the Superior Court Department on August 17, 1995.

The case was heard by *Daniel A. Ford,* J., on motions for summary judgment, and entry of separate and final judgment was ordered by *Mary-Lou Rup,* J.

*John A. Shope* for the defendant.

*William W. Simons* for the plaintiff.

PERRETTA, J. When Leon Siegel (Leon) attempted to transfer his ownership of a policy of insurance on his life to his spouse, Carole Siegel (Carole),[1] by executing an absolute assignment of his rights under the policy to her, Berkshire Life Insurance Company (Berkshire) refused to recognize the assignment. It did so on the basis that collateral assignees of the policy had not indicated their consent to the transfer by signing release

[1]Although Leon and Carole are now divorced, they were married during the time period relevant to this dispute.

forms provided by Berkshire. Claiming that her written acknowledgment of the collateral assignment was sufficient to satisfy the terms of the policy, Carole sought a declaration under G. L. c. 231A that she was the owner of the policy as of the date of Leon's absolute assignment. On cross motions for summary judgment, a Superior Court judge concluded that Carole's written acknowledgment of the rights of the collateral assignees constituted compliance with the terms of the policy. On Berkshire's appeal, we conclude that if the collateral assignees accept the terms of Carole's acknowledgment, Carole will be entitled to a judgment declaring her to be the owner of the policy. Consequently, we vacate the judgment and remand the matter to the Superior Court for further proceedings.

1. *Procedural history.* This dispute has a complicated procedural history that is not necessarily pertinent to a resolution of the issue before us but which nonetheless puts the controversy in context. The dispute began when Berkshire brought an action seeking to rescind several policies of insurance on the life of Leon. That action was based upon allegations by Berkshire that Leon had misrepresented his physical and financial conditions in his applications for the policies of insurance issued by Berkshire.[2] While Berkshire's action for rescission was pending, the owners of two of the policies there in issue brought a complaint against Berkshire and Leon in which they sought an assignment of the rights under the policy before us.[3] Seeking to protect her claimed ownership interest in this policy, Carole moved to intervene in their action against Berkshire. Her motion for intervention was allowed, and she filed a cross complaint asking for a declaration that she was the rightful owner of the policy presently in question.[4] By reason of the procedural posture of this case, the only issue we need

---

[2]Leon's creditors owned those policies as collateral for their loans to him. At the time of the cross motions for summary judgment in the instant action, Leon was insolvent.

[3]Berkshire had not sought to rescind this policy.

[4]Carole also alleged various violations of G. L. c. 93A in her cross complaint. The cross motions for summary judgment on those allegations were denied, and a second Superior Court judge allowed Carole's motion for entry of a final judgment. See Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). Although Berkshire opposed the motion, and although the second judge made no findings in support of her conclusion that there was no just cause for delay

resolve concerns the summary judgment granted on Carole's cross complaint, in which she sought a judgment declaring her to be the owner of the policy.

2. *The undisputed facts.* On April 25, 1986, Berkshire issued the policy in dispute to Leon. The policy, which provides for a $1,500,000 death benefit, was owned by Leon. The initial beneficiary of the policy was J & L Distributors, one of Leon's business enterprises, but he later made Carole the primary beneficiary.

On May 26, 1995, Leon executed an absolute assignment of the policy to Carole on a form prepared by Berkshire. At that time, Berkshire's agent advised or reminded Carole that Leon's right, title, and interest in and to the policy was subject to his collateral assignments to City Savings Bank (City) and Stuart Masters (Masters) in the combined amount of $450,000. Carole recognized and acknowledged the rights of City and Masters, and the agent processed and forwarded Leon's absolute assignment to Berkshire's main office. In anticipation of Berkshire's acceptance of Leon's assignment, Carole paid the annual premium on the policy with contributions from City and Masters in amounts determined by her attorney to be in accordance with their proportional interests in the policy.

Some five months later, in response to an inquiry to Berkshire from Carole's attorney, Carole was informed that Berkshire would not recognize Leon's transfer of ownership of the policy until the following occurred in "proper sequence": (1) the collateral assignees, City and Masters, first released their assignments; (2) Leon next executed an absolute assignment of the policy to Carole; and (3) Carole then renewed the collateral assignments of City and Masters.[5]

---

in entering final judgment on less than all counts of the cross complaint, Berkshire makes no argument on appeal concerning the ruling on the motion. Instead, it argues that the first Superior Court judge erred in denying its motion for summary judgment. Because Berkshire did not seek and obtain leave to appeal that interlocutory order, the matter is not before us. Even were we to consider the argument, we would likely conclude that Berkshire's motion for summary judgment on the c. 93A claim was properly denied. Cf. *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366, 370 (1988).

[5]By this time, Leon was insolvent and was facing a criminal investigation for embezzlement of approximately $14,000,000. He ultimately pleaded guilty

Carole responded by letter in which she expressed her concerns about Berkshire's position and suggested an alternative solution, viz., that all parties (Leon, Carole, City, and Masters) sign an agreement stating their recognition and acknowledgment of Carole's ownership of the policy subject to their outstanding collateral agreements. She also tendered an unsigned draft of the proposed agreement. Berkshire rejected Carole's proposal, again stating that the terms of the policy required that City and Masters execute releases of their assignments, that Leon then execute a new absolute assignment of the policy to Carole, and, finally, that Carole renew the collateral assignments in favor of City and Masters.

3. *The policy.* According to the terms of the insurance contract, the owner of the policy has the following rights:

> "Except as provided in this policy or any amendment, all rights, privileges, options, and benefits granted by this policy or allowed by us while you are living are vested in the owner. This includes the right to transfer ownership. The owner may exercise *all such rights without the consent of any other persons except any irrevocable beneficiary and any assignments on file at our home office*" (emphasis added).

This provision must be read in conjunction with the following definition of terms also set out in the policy:

> "assignee — the one to whom an assignment is made.

> "assignment — the transfer of the right to certain policy benefits to someone other than the owner.

>> *absolute a.*— the transfer of ownership of this policy to someone other than the owner. [Emphasis original.]

> ". . .

> "owner — the one who owns the policy."

to Federal charges of fraud and larceny arising out of his operation of a so-called Ponzi scheme through his alleged business enterprise, J & L Distributors, Inc.

The policy does not define the terms "consent" or "collateral assignee."

Based upon these provisions, the Superior Court judge determined that the policy was ambiguous as to the question of whether the phrase "any assignments on file" required the consent of absolute assignees, or collateral assignees, or both to an owner's transfer of ownership. As put by him:

> "[A]n 'assignment' could neither consent nor object to a transfer of ownership. An 'assignment' is not a person, and only an 'assignee,' i.e. the individual to whom an assignment is made, could make such an election. There is a question as to whether the Policy language contemplates the consent of an absolute assignee or a collateral assignee, or both. Obviously, an absolute assignee would be the new owner of a policy, and therefore it seems clear enough that the old owner of a policy could not again transfer ownership without the consent of such an absolute assignee. Whether the consent of a collateral assignee is required is not clearly spelled out by the Policy language."

No one disputes Leon's right to make an absolute assignment of the policy to Carole. Rather, the question before us is whether the policy requires that City and Masters release their rights under the policy prior to the absolute assignment. In answering this question, we are mindful of the fact that we must construe the policy according to the fair and reasonable meaning of its terms and resolve "doubts created by any ambiguous words or provisions . . . against the insurer." *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 324 (1991). See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982).

We begin with the provision of the policy that provides that ownership of the policy cannot be transferred without the consent of "any assignments on file." We agree with the Superior Court judge's observation that an " 'assignment' is not a person and that only an 'assignee,' i.e., the individual to whom an assignment is made" could make the election to consent to a transfer of ownership of the policy. Consequently, we read the policy to provide that its ownership cannot be

transferred without the consent of *any* assignee whose name is on file with Berkshire. Any other reading of that provision would render the requirement for the consent of "any assignment on file" meaningless.

Although we agree with the Superior Court judge's observation concerning the obvious necessity for consent by an absolute assignee to any transfer of ownership of the policy, we do not think that it thereby follows that the policy is ambiguous as to whether the consent of any collateral assignee is also required. Rather, we conclude that a reasonable reading of the applicable terms of the policy leads to the conclusion that no assignment of rights under the policy, absolute or collateral, can be made without the consent of those assignees whose names are on file with Berkshire at the time of any transfer of ownership of the policy. "An interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable. *Sherman* v. *Employers' Liab. Assurance Corp.*, 343 Mass. 354, 357 (1961)." *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. 240, 245 (1986).

4. *Consent.* Having concluded that the policy, as reasonably construed, requires the collateral assignees' consent to any assignment of ownership, we must next consider the term "consent." As earlier noted, the policy does not define that term.

Carole sought to comply with the terms of the policy by offering a proposed agreement, which, if approved by Berkshire, was to be signed by her, Leon, City, and Masters. The proposed agreement describes the collateral assignments to City and Masters with specificity and provides, in pertinent part:

> "Each of the parties hereto acknowledge that Carole is the owner and beneficiary of [the policy], subject to an assignment of $250,000 to [City] and a further assignment of $200,000 to Masters.

> "The parties further agree that Berkshire . . . may rely upon the documents heretofore executed and filed with the company without regard to their respective dates or order of filing."

Berkshire refused to approve the proposed agreement and

took the position that, because Leon had not presented it with completed form releases from City and Masters prior to his absolute assignment to Carole, the collateral assignees had not given their "consent" to the assignment. The form release that Berkshire demanded be signed by City and Masters *prior* to Leon's absolute assignment provides: "FOR VALUE RECEIVED, all right, title and interest of the undersigned in and to the above numbered policy issued by Berkshire . . . is hereby relinquished and released . . . ."

According to the affidavit of the senior vice president of Berkshire's customer service division, Berkshire maintains a policy of not recognizing an assignment of ownership unless all outstanding collateral assignments are released prior to the assignment. It then remains open to the absolute assignee to reissue the previously released collateral assignments. Berkshire insisted upon this sequence of events in order to alert a collateral assignee that a new person would be responsible for paying the premiums on the policy protecting the collateral assignee's interest and to reduce the risk that an absolute assignee would later sue Berkshire for any reliance damages stemming from an erroneous belief that the transferred policy was not subject to any outstanding obligations.

Although Berkshire's business practice requires that a policy owner obtain releases from collateral assignees prior to any absolute assignment, the policy speaks in terms of "consent." There is, however, a very real difference in meaning between the words "consent" and "release." The former is understood to mean "compliance or approval esp. of what is done or proposed by another . . . acquiescence, permission," Webster's Third New International Dictionary 482 (3rd ed. 1993), whereas the word "release" means "discharge from obligation or responsibility." *Id.* at 1917.

Notwithstanding what we think is a clear difference between the terms "consent" and "release," we assume for purposes of decision that the term "consent" is ambiguous and that it allows for more than one interpretation. We come then to the principle that, "[w]here the language [of the policy] permits more than one rational interpretation, that most favorable to the insured is to be taken." *Palmer* v. *Pawtucket Mut. Ins. Co.*, 352 Mass. 304, 306 (1967).

Berkshire's reading of the policy is not reasonable. In the first instance, we can think of no reason why a creditor would surrender his assigned rights under the policy and leave it to the absolute assignee to execute a new assignment. Additionally, there is nothing in the policy that reasonably could be construed as making an insurer's unilaterally drafted forms binding upon the insured. Were it otherwise, our analysis, and perhaps our conclusion, might be different. Based upon the language of the policy before us, we agree with the Superior Court judge's conclusion that Berkshire's reading of the policy leads to the imposition of a condition which essentially allows an assignee to thwart the rights of the insured and, more importantly, which is not within the comprehension of the terms of the policy.

On the other hand, we think that the terms of Carole's proposed agreement are consistent with the meaning of the word "consent" and they also answer all the concerns raised by Berkshire. Once signed by Leon, Carole, City, and Masters, and filed with Berkshire, there can be no question about the fact that Carole's ownership of the policy by reason of an absolute assignment from Leon is "subject" to the collateral assignments of City and Masters. We can think of no reason why such a completed agreement would fail to constitute "consent" within the usual meaning of that word and the terms of the policy.

Although we agree with the Superior Court judge's conclusion that Carole's proposed agreement, if executed, constituted "consent" within the terms of the policy, we think it unnecessary to define the term "consent," as did the Superior Court judge, to mean "*subject to the rights of any collateral assignee,*" no matter the circumstances presented and as matter of law. Rather, we confine our analysis to the usual meaning given to the word "consent" and to the language of Carole's proposed agreement considered in light of the undisputed circumstances. On that basis, we conclude that Carole's proposed agreement, if executed, constitutes "consent" within the meaning of the terms of the policy.

5. *The judgment.*[6] Because Berkshire rejected Carole's

[6]Consistent with his analysis, which we think too broad, the Superior Court judge ordered entry of a judgment declaring Carole to be the owner of the

proposal out of hand, that is, on the sole basis that only its form releases would be accepted, City and Masters were never asked to sign on to the agreement. The judgment must be vacated and the matter remanded to the Superior Court for further proceedings to determine whether City and Masters will sign on to Carole's agreement or otherwise consent to the absolute assignment. Upon their consent, a judgment is to enter declaring Carole to be the owner of the policy in question subject to the collateral assignments made to City Savings Bank and Stuart Masters prior to May 26, 1995.

*So ordered.*

policy "subject only to collateral assignments to City . . . and Masters recorded on the records of Berkshire prior to May 26, 1995."