CAROLE G. SIEGEL *vs.* BERKSHIRE LIFE INSURANCE COMPANY.

No. 04-P-651.

Berkshire. April 4, 2005. - October 6, 2005.

Present: KANTROWITZ, DREBEN, & COHEN, JJ.

*Insurance,* Life insurance. *Consumer Protection Act,* Insurance, Demand letter, Attorney's fees, Unfair or deceptive act, Damages. *Assignment.*

This court concluded that the plain language of G. L. c. 93A, § 9(3), exempted a party who voluntarily intervened in an action against an insurer from the requirement of sending a demand letter before filing her cross claim against the insurer. [700-701]

A Superior Court judge properly concluded that an insurer's unfair and deceptive acts, which placed a beneficiary's interest in a life insurance policy in jeopardy and required her to take legal action to protect her rights, satisfied the injury requirement of G. L. c. 93A, § 9(1), and thus enabled the plaintiff to recover damages. [701-702]

A Superior Court judge did not err in concluding that an insurer had engaged in behavior that violated G. L. c. 93A. [702-703]

In the circumstances of a G. L. c. 93A claim brought by a beneficiary of a life insurance policy against the insurer, the trial judge erred in refusing to treat certain of the plaintiff's attorney's fees as actual damages subject to multiplication, and the matter was remanded to Superior Court for findings on that issue [703-704] and for recalculation of the attorney's fee award [704-706].

CIVIL ACTION commenced in the Superior Court Department on January 10, 1996.

Following review by this court, 51 Mass. App. Ct. 744 (2001), a claim under G. L. c. 93A was heard by *Daniel A. Ford,* J.

*Michael B. Keating* for the defendant.

*Richard A. Simons (William W. Simons* with him) for the plaintiff.

COHEN, J. This case, which comes before us for the second time, arises out of a dispute concerning the ownership of a term life insurance policy with a $1.5 million death benefit, issued by Berkshire Life Insurance Company (Berkshire) to Leon Sie-

gel (Leon), the former husband of Carole Siegel (Carole). Carole, who was the beneficiary of the policy, was designated to become its owner under the terms of her divorce with Leon,[1] but Berkshire refused to recognize Leon's assignment of the policy to her, insisting upon the execution of releases by two collateral assignees as a condition of the transfer. In *Siegel* v. *Berkshire Life Ins. Co.*, 51 Mass. App. Ct. 744 (2001), which provides additional factual background, we held that Berkshire had no right to demand such releases and was required to recognize the transfer of ownership from Leon to Carole as long as the collateral assignees signified their consent.

Relevant to the appeal before us, Berkshire also had issued other life insurance policies to Leon, which it later sought to rescind because of alleged misrepresentations in Leon's policy applications. Two of these policies were owned by Michael Eisenbud and Patricia Smith, creditors of Leon. When Berkshire sought to rescind the policies owned by them, Eisenbud and Smith (the creditors) sued Berkshire and Leon seeking to obtain an assignment of rights under the policy at issue here. In order to protect her interest in the policy, Carole intervened as a party defendant in the creditors' lawsuit. She also filed a cross claim against Berkshire for declaratory judgment (count I) and for relief under G. L. c. 93A, § 9 (count II), on account of its refusal to effectuate Leon's assignment to her of the policy ownership and related conduct that put her interest in the policy at risk.

After our earlier decision on count I of her cross claim, Carole's c. 93A claim was tried without jury to a judge of the Superior Court. Following a three-day trial, the judge issued comprehensive findings of fact and conclusions of law. The judge found that Berkshire acted unfairly and deceptively in its dealings with Carole in several respects: by taking an unreasonable position with respect to the method by which the policy could be assigned; by concealing from her its rejection of the

---

[1] The policy was Carole's only source of financial security after the divorce. The divorce came on the heels of the revelation that Leon had perpetrated a massive fraud upon his investors, leading to his financial collapse and imprisonment. As the owner of the policy, Carole could be sure that her status as beneficiary would not be changed and that the policy premiums would be paid.

assignment Leon and Carole had submitted; by refusing to send Carole copies of premium notices; and by conceding in the creditors' lawsuit that Leon was the owner of the policy, thus encouraging them to pursue their claims that the policy should be available to them as substitute security. The judge found further that, as a result of this unfair and deceptive conduct, Carole's interest in the policy was placed in jeopardy, she was required to obtain legal representation, and it became necessary for her to engage in litigation to protect her rights.

Although the judge found that Carole did not prove that she suffered any monetary damages or out-of-pocket losses as a result of Berkshire's c. 93A violations, he ruled that she was entitled to an award of nominal damages and reasonable attorney's fees, which he assessed at $125,000. The judge rejected Berkshire's contention that Carole's claim was barred because she did not send Berkshire a demand letter pursuant to c. 93A, § 9, before filing her cross claim. He also rejected Carole's contention that in the circumstances her legal fees constituted actual damages subject to doubling or trebling.

The parties have filed cross appeals from the judgment on the c. 93A claim. Berkshire argues that Carole was subject to the demand letter requirement; that Carole was not entitled to c. 93A relief because she failed to prove any injury resulting from Berkshire's conduct; that Berkshire's actions could not constitute c. 93A violations; and that the attorney's fee award to Carole was excessive. Carole argues that on the facts presented, her legal fees constituted actual damages subject to multiplication. She also asks for an award of additional legal fees associated with this appeal.

*Demand letter.* The judge correctly ruled that Carole was not required to send Berkshire a demand letter before filing her cross claim, because G. L. c. 93A, § 9(3), explicitly exempts cross claims from the demand letter requirement. Contrary to Berkshire's argument, we think it makes no difference whether Berkshire "forced" Carole into court. Indeed, the cross claim exception assumes a situation where both the c. 93A claimant and the c. 93A defendant have been brought into court by another party with interests adverse to theirs. See, e.g., Mass.R. Civ.P. 13(g), 365 Mass. 759 (1974). In any event, as the judge

found, Berkshire's unfair and deceptive acts made it necessary for Carole to protect her rights in the policy by intervening in the creditors' lawsuit and, in that sense, Berkshire compelled her entry into the litigation.

Even if Carole voluntarily intervened in the creditors' lawsuit, she was not required to precede her cross claim with a demand letter. The cross claim exception contains no limitation pertaining to interveners, and we see no reason to depart from the plain language of the statute. See *Buddy's Inc.* v. *Saugus*, 62 Mass. App. Ct. 256, 260-263 (2004) (analyzing prelitigation demand procedures contained in G. L. c. 21E, § 4A). Berkshire's position that a proper demand letter might have facilitated discussion between the parties or otherwise enhanced its position is disingenuous: nothing prevented Berkshire from discussing the claim with Carole after the cross claim was filed, or from taking advantage of the statute's provisions to limit its exposure.[2]

*Injury to Carole.* As we later explain, there remains an issue whether and to what extent Carole suffered actual damages in the form of attorney's fees incurred in protecting her rights in the policy against the claims of the creditors. But even if we assume that she incurred no such damages, there is no merit to Berkshire's argument that Carole may not recover because she "never suffered any adverse effect" as a result of its conduct.

As Berkshire acknowledges in its reply brief, the right to obtain relief under c. 93A, § 9, does not require financial harm. Section 9(1) was amended by St. 1979, c. 406, § 1, to expand the class of individuals who may obtain relief beyond those who suffer a "loss of money or property" and to include, among others, persons who have been "*injured* by another person's use or employment of any method, act or practice declared to be unlawful by section two . . ." (emphasis supplied). Injury is established and relief may be had if the claimant shows the "invasion of a legally protected interest." *Aspinall* v. *Philip*

---

[2]In much the same way that the statute allows a demand letter recipient to limit the c. 93A claimant's recovery by making an appropriate response to the demand, it allows a party whose first notice of a c. 93A claim is the filing of a cross claim or counterclaim to make a written offer of relief and, if the offer is rejected, to pay the tender into court. G. L. c. 93A, § 9(3).

*Morris Cos.*, 442 Mass. 381, 400 (2004), quoting from *Leardi* v. *Brown*, 394 Mass. 151, 160 (1985).

Here, the judge found that Berkshire's unfair and deceptive acts placed Carole's interest in the policy in jeopardy and required her to take legal action to protect her rights. These consequences of Berkshire's c. 93A violations satisfied the injury requirement of the statute.[3]

*Chapter 93A violations.* In arguing that the facts were insufficient to establish any c. 93A violation, Berkshire misinterprets our previous opinion in this case. We did not hold simply that there was an alternative method of effectuating an assignment of Leon's policy; we held that Berkshire engaged in an unreasonable reading of the policy and imposed unnecessary conditions upon its acceptance of an assignment. *Siegel* v. *Berkshire Life Ins. Co.*, 51 Mass. App. Ct. at 751. The judge did not err in concluding that this behavior violated c. 93A. See *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366, 370-371 (1988) (c. 93A violation found where insurer insisted upon subrogation agreement that was not required by its policy).

There also was sufficient evidence to support the judge's determinations that Berkshire concealed its rejection of the original assignment, failed to send Carole copies of premium notices as requested,[4] and took the unqualified position that Leon was the owner of the policy, thereby creating the misleading impression that the policy was available to Leon's creditors

---

[3]Berkshire's reliance upon *Lord* v. *Commercial Union Ins. Co.*, 60 Mass. App. Ct. 309, 322-323 (2004), is misplaced. As the Supreme Judicial Court explained in *Aspinall* v. *Philip Morris Cos.*, 442 Mass. at 400-401, *Lord* is instructive only to the extent that it reiterates that a plaintiff must prove a causal connection between the defendant's c. 93A violation and the plaintiff's injury. In *Lord*, we vacated an award of statutory damages and attorney's fees and costs, where the judge and jury found that the plaintiff failed to establish that any harm he suffered was attributable to the defendant. 60 Mass. App. Ct. at 317-318, 323. Here, in contrast, the judge expressly found that Carole's rights in the policy were jeopardized as a result of Berkshire's c. 93A violation, making it necessary for her to engage in litigation.

[4]The judge expressed his belief that Berkshire would have been only too happy if the policy had lapsed for nonpayment of premiums. As Berkshire was aware, Leon had become a poor health risk, having suffered a massive heart attack. Berkshire also was aware that Leon was in prison and that it was Carole who was interested in keeping the policy in force and who was paying the policy premiums, with some contributions from the collateral assignees.

as security.[5] The judge was not required to accept contrary evidence cited by Berkshire and properly could conclude that these actions were unfair and deceptive.

*Attorney's fees as damages.* Being of the opinion that the law did not permit him to do so, the judge refused to treat Carole's attorney's fees as actual damages subject to multiplication.[6] In so ruling, the judge did not distinguish between the legal fees Carole incurred in defending against the claims of the creditors and those incurred in prosecuting her claims against Berkshire. We think that was incorrect.

If a c. 93A violation forces someone to incur legal fees and expenses that are not simply those incurred in vindicating that person's rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property. See *Columbia Chiropractic Group, Inc.* v. *Trust Ins. Co.,* 430 Mass. 60, 63 (1999); *Tech Plus, Inc.* v. *Ansel,* 59 Mass. App. Ct. 12, 21 (2003). Thus, to the extent that Carole incurred legal fees in defending against the creditors' efforts to obtain ownership of the policy, such fees constituted actual damages resulting from Berkshire's unfair and deceptive conduct. Compare *Hanover Ins. Co.* v. *Golden,* 436 Mass. 584, 595 n.6 (2002) (Sosman, J., dissenting) (observing that an insurer that violates c. 93A by wrongfully failing to defend its insured "faces the prospect of paying three times the insured's

---

[5]Berkshire disputes this finding because Leon remained the nominal owner of the policy until after our prior decision, when Carole obtained the signatures of the collateral assignees on a consent agreement that she had proposed to Berkshire, but that Berkshire previously had rejected. According to Berkshire, because the agreement had yet to be executed, Leon technically remained the owner of the policy; thus, Berkshire could not be found liable under c. 93A for having taken this position.

We think the trial judge was entitled to find Berkshire's actions to be unfair and deceptive in this respect. There was evidence to support the conclusion that it was Berkshire's wrongful refusal to accept Carole's proposed agreement that delayed the execution of the consent agreement; that Berkshire knew that the collateral assignees were inclined to cooperate with Carole; and that, in the circumstances, Berkshire's assertion that Leon was the owner of the policy was incomplete and misleading.

[6]The judge reached this conclusion reluctantly. He found Berkshire's c. 93A violations to be wilful and knowing, and stated that "if I felt that the law permitted an award of multiple attorneys' fees in circumstances such as these, I would not hesitate to make such an award."

attorney's fees in the underlying action and in the declaratory judgment action, plus the attorney's fees that the insured incurs in pursuing the G. L. c. 93A claim").

Because the trial judge was under the mistaken impression that he could not treat any portion of Carole's fees as damages, it is necessary to remand the case for findings on this issue. The evidence was that Carole and her attorney were personal friends, operating under an informal arrangement whereby the attorney would be compensated, if at all, upon successfully concluding the c. 93A case. There was no written fee agreement between them, but it was understood that, if she obtained a recovery against Berkshire, Carole would be charged a reasonable fee for her attorney's services.[7] Thus, an issue to be addressed on remand is whether Carole's agreement to pay her attorney after the conclusion of the litigation included an agreement to pay a reasonable amount for the attorney's representation of her vis à vis the creditors. If so, the judge should determine that amount and treat it as "actual damages," which the judge may multiply if he sees fit to do so.

*Reasonableness of attorney's fee award.* Regardless of the arrangements Carole had with her attorney, as the prevailing party in a c. 93A case, she was entitled to recover a reasonable attorney's fee for the work done to vindicate her rights under the statute. See *Graves* v. *R.M. Packer Co.*, 45 Mass. App. Ct. 760, 771 (1998). The award of fees under the statute belongs to the prevailing party, not the attorney, while the extent of the party's obligation to pay his or her attorney is defined by the agreement between them. *Ibid.*, citing *Smith* v. *Consalvo*, 37 Mass. App. Ct. 192, 195 (1994). See generally *Cambridge Trust Co.* v. *Hanify & King Professional Corp.*, 430 Mass. 472, 478-481 (1999).

"The amount of a reasonable attorney's fee, awarded on the basis of statutory authority . . . is largely discretionary with the judge, who is in the best position to determine how much time

---

[7]Although Berkshire characterizes this arrangement as an unwritten contingent fee agreement that violated Mass.R.Prof.C. 1.5(c), as amended, 432 Mass. 1301 (2000), Berkshire does not dispute the attorney's right to receive the fair value of his services. See *Guenard* v. *Burke*, 387 Mass. 802, 807-808 (1982).

was reasonably spent on a case, and the fair value of the attorney's services." *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 324 (1993). However, the exercise of the judge's discretion must be guided by proper legal principles. We think that the judge did not apply the correct standards in making the fee award in this case and that recalculation is necessary.

The judge arrived at the fee award using the factors set forth in *Mulhern* v. *Roach*, 398 Mass. 18, 24 (1986), which involved a dispute between a lawyer and client over the reasonable value of the lawyer's services in representing the client in two land damage cases. That case identified the following considerations relevant to the assessment of attorney's fees: "the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by the controversy, and the results secured." *Ibid.*, quoting from *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933). Compare *Linthicum* v. *Archambault*, 379 Mass. 381, 388-389 (1979).

Applying the *Mulhern* factors, the judge found that Carole's attorney, a retired judge, was extremely able and highly regarded; that he had particular expertise in insurance matters; but that, because he was semi-retired, he was not required to turn away other business in order to devote time to this case. The judge also found that the case was very complex and raised a number of novel and difficult issues. He further determined that it was of great value to Carole to acquire full ownership of the policy; that the time spent by Carole's attorney on the case was reasonable; and that his hourly rate was fair. Finally, the judge took into account that the attorney prevailed at every stage of the litigation, but declined to find that the attorney's representation benefitted persons other than Carole. Based upon this analysis, as well as the judge's own considerable experience on the bench and as a practicing lawyer, the judge awarded Carole legal fees of $125,000, which was $30,000 less than the $155,000 she sought.

Despite the thoroughness of the judge's analysis, we think it does not comport with current standards for an award of statu-

tory legal fees against an adverse party. The Supreme Judicial Court has indicated that the "basic measure" of a reasonable statutory attorney's fee award is the lodestar method, which involves "multiplying the number of hours reasonably spent on the case [by] a reasonable hourly rate."[8] *Fontaine* v. *Ebtec Corp.*, 415 Mass. at 324. The lodestar method should govern in such cases "unless there are special reasons to depart from [it]." *Id.* at 325. The court further indicated in *Fontaine*, a contingent fee case, that, "[i]n limited circumstances, [such] awards may be enhanced to compensate for the risk of nonpayment." *Id.* at 324.

In this case, it appears that a calculation based purely upon the lodestar method would have resulted in a substantially smaller award.[9] It is true that here, in contrast to *Fontaine*, *supra* at 326, which the court found to be a "simple . . . case," "rais[ing] no novel issues of law," there may be justification for some degree of enhancement, because, as the judge found, the case was "a very complex piece of litigation which raised a number of novel and difficult issues." Still, we question whether the judge's calculus would be the same were he to apply the correct standards. Furthermore, it appears that he combined the attorney's time spent on the creditors' suit and the time spent on the claims against Berkshire. See note 9, *supra*. As previously explained, the former are properly viewed as damages; thus, only the latter may be awarded as c. 93A attorney's fees. On remand, the judge should recalculate the attorney's fee award consistent with this opinion.

---

[8]Under the lodestar method, other, formerly separate considerations, see, e.g., *Linthicum* v. *Archambault*, 379 Mass. at 388-389, come into play indirectly. For example, the complexity of the case is likely to be reflected in the judge's finding as to the amount of time reasonably spent on the matter, and the ability and reputation of the attorney are likely to be reflected in the judge's finding as to a reasonable hourly rate. See *Stratos* v. *Department of Pub. Welfare*, 387 Mass. 312, 322-324 (1982).

[9]The judge found Carole's attorney's hourly rate of $200 to be fair and reasonable, and credited the attorney's testimony as to his hours: 200 hours spent on Carole's claim to ownership of the policy prior to August 22, 2001, when judgment entered on count I of Carole's cross claim declaring her the owner of the policy; ninety-six hours since August 22, 2001 (excluding Berkshire's appeal from the judgment on count I); and 125 hours on the creditors' claim against Carole. All told, this amounts to 421 hours, which, at the rate of $200 per hour, equals $84,200.

*Appellate attorney's fees.* It is well established that, "[i]n appropriate circumstances, appellate counsel fees may be awarded in claims under G. L. c. 93A." *Bonofiglio* v. *Commercial Union Ins. Co.*, 412 Mass. 612, 613 (1992). To the extent that Carole has successfully opposed Berkshire's appeal and prevailed on her cross appeal, she is entitled to an award of fees and costs in connection with both aspects of the case. *Ibid.* Within fourteen days of the issuance of the rescript, Carole may apply to the panel who heard and decided this appeal for an award of appellate attorney's fees and costs, in the manner described in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

*Conclusion.* The judgment on count II of Carole's cross claim is vacated and the matter is remanded to the Superior Court to address the question of Carole's actual damages and to recalculate the award of attorney's fees consistent with this opinion. Should the judge deem it necessary, he may, in his discretion, take additional evidence bearing on these issues.

*So ordered.*