# Carole G. Siegel *vs.* Berkshire Life Insurance Company.

No. 06-P-1659.

Berkshire. May 7, 2007. - September 28, 2007.

Present: Trainor, Dreben, & Katzmann, JJ.

*Insurance,* Life insurance. *Consumer Protection Act,* Attorney's fees. *Damages,* Attorney's fees, Interest. *Practice, Civil,* Interest.

In a civil action pursuant to G. L. c. 93A brought by the assignee of a life insurance policy against the defendant insurance company for, inter alia, creating the misleading impression that the assignor's creditors could reach that policy, the Superior Court judge properly awarded attorney's fees to the plaintiff as actual damages resulting from the defendant's unfair and deceptive conduct (and properly trebled those damages), where the judge concluded that there was an implied agreement between the plaintiff and her attorney that the attorney would be compensated for all aspects of his work in representing her in relation to the policy — including defending her against an action brought by the assignor's creditors — out of any recovery obtained from the defendant. [321-322]

A Superior Court judge properly calculated prejudgment interest on damages awarded to the plaintiff for attorney's fees she incurred as a result of the defendant insurance company's violation of G. L. c. 93A, even though payment of those fees was deferred until the defendant's liability was established, where the defendant's deceitful actions in diminishing the value of the plaintiff's policy (and thus necessitating the retention of counsel) caused the plaintiff immediate injury. [322-324]

In an action seeking attorney's fees as damages under G. L. c. 93A, it was within the judge's discretion to deny the plaintiff's motion to reopen a hearing concerning the value of her counsel's services, and the plaintiff waived any fraud-based claim to overturn that judgment by not raising it in the trial court. [324]

Civil action commenced in the Superior Court Department on January 10, 1996.

Following review by this court, 51 Mass. App. Ct. 744 (2001), and 64 Mass. App. Ct. 698 (2005), the case was heard by *Daniel A. Ford,* J.

*Michael B. Keating (Christopher M. Boundy* with him) for the defendant.

*Richard A. Simons* (*William W. Simons* with him) for the plaintiff.

DREBEN, J. For the third time, Berkshire Life Insurance Company (Berkshire) has appealed from orders of a Superior Court judge in Carole Siegel's (Carole) pursuit of a life insurance policy assigned to her by her former husband, Leon Siegel (Leon). The present appeal is from an award of legal fees as damages under G. L. c. 93A, and from the imposition of prejudgment interest on those damages from the date of the filing of the claim although the fees were not payable until later. We affirm.

The background facts and procedural history are set out in *Siegel* v. *Berkshire Life Ins. Co.*, 51 Mass. App. Ct. 744 (2001) (*Siegel I*), and *Siegel* v. *Berkshire Life Ins. Co.*, 64 Mass. App. Ct. 698 (2005) (*Siegel II*). For purposes of this appeal, the following facts will put the latest dispute in context. In 1995, after Berkshire brought an action seeking to rescind several other policies of insurance on the life of Leon on the grounds of misrepresentation, owners of two of these policies (creditors of Leon) brought a complaint against Berkshire and Leon in which they sought an assignment of the rights in the policy which Leon had assigned to Carole in May, 1995.[1] In order to protect her interest in the policy, Carole intervened as a party defendant and filed a cross claim against Berkshire for a declaration that she was the owner of the policy (count I) and for relief under G. L. c. 93A, § 9 (count II). *Siegel I* (the decision on count I) determined that Carole was the owner and that conditions imposed by Berkshire to effect the assignment were not reasonable; *Siegel II* (the decision on count II) determined that Berkshire had violated c. 93A.[2] Among the c. 93A violations found by the trial judge, and affirmed in *Siegel II*, was Berkshire's concession in the creditors' lawsuit that Leon was the owner of the policy, thereby creating the misleading impression that Leon's creditors could reach that policy.

*Siegel II* also involved the question of attorney's fees as damages. In her cross appeal, Carole successfully claimed that "[t]o the extent that [she] incurred legal fees in defending against

---

[1] The two actions were consolidated.

[2] The two counts were separately tried and separately appealed.

the creditors' efforts to obtain ownership of the policy, such fees constituted actual damages resulting from Berkshire's unfair and deceptive conduct" and could be multiplied. *Siegel II*, 64 Mass. App. Ct. at 703. In our opinion remanding the matter to the trial judge, we stated:

> "Because the trial judge was under the mistaken impression that he could not treat any portion of Carole's fees as damages, it is necessary to remand the case for findings on this issue. The evidence was that Carole and her attorney were personal friends, operating under an informal arrangement whereby the attorney would be compensated, if at all, upon successfully concluding the c. 93A case. There was no written fee agreement between them, but it was understood that, if she obtained a recovery against Berkshire, Carole would be charged a reasonable fee for her attorney's services. Thus, an issue to be addressed on remand[3] is whether Carole's agreement to pay her attorney after the conclusion of the litigation included an agreement to pay a reasonable amount for the attorney's representation of her vis à vis the creditors. If so, the judge should determine that amount and treat it as 'actual damages,' which the judge may multiply if he sees fit to do so." (Footnote omitted.)

*Id.* at 704.[4]

On remand, after taking additional evidence (from Carole), as permitted by our *Siegel II* decision, the judge, based on that evidence and on the previous testimony of her attorney, found that there was an implied agreement that Carole would be charged a reasonable fee for the attorney's services if she obtained a recovery against Berkshire. He also found that neither Carole

---

[3]The other issue remanded was the amount of attorney's fees for vindicating Carole's rights under c. 93A, as contrasted with the fees incurred as actual damages because of the necessity of defending against the creditors' suit as a result of Berkshire's unfair conduct.

[4]*Siegel II*, 64 Mass. App. Ct. at 706 n.9, noted that the trial judge had "credited the attorney's testimony as to his hours: 200 hours spent on Carole's claim to ownership of the policy prior to August 22, 2001, when judgment entered on count I of Carole's cross claim declaring her the owner of the policy; ninety-six hours since August 22, 2001 (excluding Berkshire's appeal from the judgment on count I); and 125 hours on the creditors' claim against Carole."

nor counsel made any attempt to "compartmentalize" the three aspects of his work but that there was an implied agreement that counsel would be compensated in a reasonable amount for all three: defense against the claims of Leon's creditors; establishment of Carole's ownership of the policy; and the assertion of Carole's c. 93A claim against Berkshire.

In determining the amount of the fee attributable to counsel's efforts to defeat the creditors' claims, the judge stated:

> "Clearly, the time which [counsel] spent in attempting to establish Carole's claim to ownership of the Policy was not time spent in vindicating Carole's rights under Chapter 93A. Instead, his time spent in that regard comprised a key component of his efforts to fend off the claims of Leon's creditors to the Policy. If I had made that proper distinction in my original decision, I most assuredly would have concluded that the time spent by [counsel] in defending against the creditors' claims included the 200 hours which he spent in establishing the fact that Carole was the owner of the Policy. Once he succeeded in that endeavor, the claims of the creditors were doomed."

Finding Berkshire's violation to be wilful and knowing (indeed "outrageous"), the judge trebled the damages (325 hours at $200 per hour [$65,000] times three, for a total of $195,000). See *Siegel II*, 64 Mass. App. Ct. at 706 n.9. This sum was separate from the ninety-six hours spent on the c. 93A claim against Berkshire and the amounts spent after the decision in *Siegel II*. Although in his decision of May 31, 2006, the judge did not award prejudgment interest on the damages of $65,000, on reconsideration, he awarded interest from the date Carole filed her cross claim.

1. *Damages for defending against action brought by Leon's creditors.* Berkshire argues that Carole's testimony — that they never talked about money — establishes that she had no agreement with her attorney for payment of fees at all, let alone for work done on the creditors' action. The trial judge found otherwise, having heard the testimony of both Carole and counsel. He found, and the record amply supports, the following:

> "When [counsel] became involved in this matter in March

of 1995, Carole was in dire financial straits and on the verge of emotional collapse. She turned for help to [counsel], with whom she was acquainted from her synagogue. Because Carole had no funds from which to pay any legal fees, and because of her state of extreme emotional distress, [counsel] was not crass enough to discuss legal fees with her at that time. However, Carole understood and agreed that if [counsel] obtained a recovery on her behalf, she would pay a reasonable legal fee to him from any such recovery. See *Webster* v. *Kelly,* 274 Mass. 564, 572 (1931)."

In addition to *Webster* v. *Kelly,* cited by the judge, see *T.F.* v. *B.L.,* 442 Mass. 522, 526-527 (2004) (discussing the requisites for an implied contract). Although Carole also spoke of an ethical obligation, the judge was warranted in finding that she fully understood and agreed that, if her counsel obtained funds from Berkshire, he would be paid. This finding and the findings that the parties did not "compartmentalize" the three aspects of the work, and that there was an implied agreement that counsel would be compensated in a reasonable amount for all three, was not clearly erroneous.

2. *Prejudgment interest on actual damages ($65,000).* In arguing that the judge erred in awarding prejudgment interest, Berkshire claims that interest should not be awarded on attorney's fees even if such fees are awarded as actual damages. However, the case it cites in support of its argument, *Patry* v. *Liberty Mobilehome Sales, Inc.,* 394 Mass. 270, 272-273 (1985), specifically indicates that if attorney's fees are part of a plaintiff's damages, interest should be awarded.

Berkshire also argues, citing *St. Paul Surplus Lines Ins. Co.* v. *Feingold & Feingold Ins. Agency, Inc.,* 427 Mass. 372, 377 (1998), that it is illogical to say that Carole lost the use of funds when she never paid her counsel for his work in this matter. "The matter of awarding prejudgment interest is, however, one of balancing equities." *USM Corp.* v. *Marson Fastener Corp.,* 392 Mass. 334, 350 (1984). See *Jet Spray Cooler, Inc.,* v. *Crampton,* 377 Mass. 159, 183-184 (1979). Indeed, this was the basis for denying prejudgment interest in *St. Paul,* the court saying, "the fact that no loss was incurred until after an action was commenced should be recognized, as a matter of fairness, in

order to avoid giving a party an undeserved windfall." *St. Paul Surplus Lines Ins. Co.* v. *Feingold & Feingold Ins. Agency, Inc.,* *supra* at 377. See *Sterilite Corp.* v. *Continental Cas. Co.,* 397 Mass. 837, 841-842 (1986) (denying prejudgment interest on attorney's fees prior to payment of those fees). That Carole's counsel, recognizing that she had no assets, was willing to defer payment should not devolve to Berkshire's benefit when its unfair and deceitful actions caused the necessity of legal action and the damages. "[T]o hold otherwise would give the windfall to the wrongdoer." *Jet Spray Cooler, Inc.* v. *Crampton, supra* at 183, quoting from *Mishawaka Rubber & Wooden Mfg. Co.* v. *S.S. Kresge Co.,* 316 U.S. 203, 207 (1942). Cf. *United Cos. Lending Corp.* v. *Sargeant,* 32 F. Supp. 2d 21, 25 (D. Mass. 1999) (pro bono attorney would be entitled to attorney's fees under c. 93A, as "it would be strange indeed to penalize attorneys who are willing to sacrifice profits to represent the less fortunate").

Moreover, an analogy may be made to *Commonwealth* v. *Johnson Insulation,* 425 Mass. 650, 665-667 (1997), an action in which the defendant was found liable to the Commonwealth for the cost of asbestos removal. Prejudgment interest on the full amount of damages was imposed under G. L. c. 231, § 6B, although some of the costs had yet to be undertaken. The court explained:

> "The Commonwealth's projected abatement costs are not 'future damages,' but are rather an estimation of damage that has already occurred, for which compensation is already due. The cost of repairs is the outlay necessary to restore property to its preinjury condition; in undertaking a repair, the injured party substitutes one measure of damages, a cash outlay, for another measure, the diminution in the property's value occasioned by the injury."

*Id.* at 665-666. Although the analysis in *Commonwealth* v. *Johnson Insulation, supra,* has not been applied to attorney's fees, it may be argued with some persuasiveness that the injury to Carole occurred either when Berkshire imposed unjustifiable restrictions on assignment or, at the latest, when it took the position that Leon owned the policy. That stance clearly diminished the value of the policy to Carole at that time — if

upheld, it would have reduced its value to her to zero. The cost of attorney's fees was the outlay necessary to restore the policy to its preinjury value.

In any event, unlike the insurer in *Sterilite Corp.* v. *Continental Cas. Co., supra,* here it was Berkshire's deceitful actions that caused Carole immediate injury, and it would be unfair in these circumstances to allow Berkshire to profit (i.e., have the use of funds) because of Carole's inability to pay for counsel before Berkshire's liability for its wrongful actions was established. The award of prejudgment interest was properly calculated.

3. *Carole's "cross appeal."* In order to estimate the value of her counsel's services, Carole sought discovery of the payments by Berkshire to its counsel for its services in this case. In a post-hearing memorandum she requested a further hearing because she claimed that the bills indicated that the testimony of Berkshire's general counsel was aimed to mislead the trial and appellate courts. Berkshire moved to strike the bills; the judge allowed the motion as to the bills that did not directly relate to this case, denied the motion as to those that did, but granted the request that they be impounded. In acting on the motion, the judge stated:

> "I have reviewed those bills and I find them interesting, but I have given them very little weight because I find that they are not particularly helpful in establishing a reasonable attorney's fee."

After the judge's decision and his amended judgment relating to prejudgment interest, Carole moved to reopen the hearing, claiming, inter alia:

> "The issue whether [Berkshire's officer] gave false or deliberately misleading testimony relating to a central issue in the case has been appropriately raised using Berkshire's own records."

The motion was denied. It does not appear that Carole has appealed from that denial. In any event, there was no error, as it was within the judge's discretion to deny such a motion. *Kerr* v. *Palmieri,* 325 Mass. 554, 557 (1950). To the extent that Carole requests this court to vacate the judgment on the ground of fraud so as to increase the legal fees awarded, that claim, not having been made in the trial court, is not properly before us.

4. *Appellate attorney's fees.* Within fourteen days of the date of the rescript Carole may apply to the panel that heard and decided this appeal for an award of appellate attorney's fees and costs, in the manner described in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

*Judgment affirmed.*