Curtin, J.
Plaintiff Miguel A. Garcia (“Garcia”) commenced this G.Lc. 93A action to recover for alleged unfair and deceptive acts by defendant 128 Sales Inc. (“128 Sales”) subsequent to the parties’ automobile sales transaction. Summary judgment was entered for 128 Sales, and Garcia filed this appeal.
Viewed strictly in the light most favorable to Garcia, the nonmoving party, Koe v. Mercer, 450 Mass. 97, 100 (2007); Constantino v. Frechette, 73 Mass. App. Ct. 352, 354 (2008), the summary judgment materials indicate that on September 9, 2006, Garcia purchased a new car from 128 Sales by trading in his existing vehicle (“trade-in”) and financing the $26,347.00 balance of the purchase price. 128 Sales informed Garcia that day that he had been approved for financing, all paperwork was completed, and Garcia left the dealership in his new car. Included in the “Motor Vehicle Cash Purchase Agreement” executed by both parties was a separate provision, covering Garcia’s trade-in and signed by him, that stated: ‘To the best of my knowledge, my trade does not and has not had frame or subframe damage, nor has it been declared a salvage vehicle and the odometer reflects true mileage.” On September 12,2006, Garcia returned, briefly, to 128 Sales to pick up the registration certificate for the new car.
In an affidavit in opposition to 128 Sales’ summary judgment motion, Garcia asserted that, five days later, on September 17, 2006, a 128 Sales employee (“Scannell”) informed him by telephone that an inspection of the trade-in had revealed frame damage that had been poorly repaired. Scannell advised Garcia that if he did not either repurchase the trade-in, or pay 128 Sales the $3,500.00 reduction in its value due to the frame damage, 128 Sales would take legal action against him. Garcia averred that he had no knowledge of any frame damage to the trade-in, and that the vehicle had been inspected, appraised, and accepted as a trade-in by 128 Sales prior to the completion of the new car sales transaction.
On September 21, 2006, Scannell attempted, unsuccessfully, to reach Garcia, but left a message asking what Garcia intended to do. On September 23, 2006, Scannell talked to Garcia for the second time by telephone, and inquired whether he had made a decision. Garcia responded that 128 Sales’ position was neither reasonable, *279 nor legitimate, and that he would consult his attorney. Scannell allegedly replied that if 128 Sales sued Garcia, he would “not have a chance.”[1]
128 Sales did not file a lawsuit against Garcia. Instead, it was Garcia who, on January 11, 2007, commenced this action alleging that he suffered emotional distress and incurred legal expenses as a result of 128 Sales’ unfair and deceptive acts in violation of G.L.c. 93A. As noted, 128 Sales moved, successfully, for summary judgment.[2]
To survive summary judgment on his G.L.c. 93A claim, Garcia was required to establish that he sustained an injury or loss directly caused by the unfair and deceptive conduct of 128 Sales. Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 802 (2006). Garcia failed, however, to advance specific facts sufficient to warrant a trial on the question of his suffering any actual injury or loss compensable under G.L.c. 93A.[3]
1. Garcia’s principal contention is that Scannell’s telephone calls threatening legal action against him by 128 Sales constituted the intentional infliction of emotional distress. While “severe emotional distress” is a “form of personal injury” compensable under G.L.c. 93A, §9 when it is intentionally inflicted and directly results from unfair and deceptive practices, Haddad v. Gonzalez, 410 Mass. 855, 865 (1991), recovery depends upon proof
(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of [the] conduct; (2) that the conduct was ‘extreme and outrageous,’ was ‘beyond *280 all possible bounds of decency’ and was ‘utterly intolerable in a civilized community’; (3) that the actions of the defendant were the cause of the plaintiff’s distress; and (4) that the emotional distress sustained by the plaintiff was ‘severe’ and of a nature ‘that no reasonable man could be expected to endure if (citations omitted).
Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976).[4] Nothing in Garcia’s complaint, or in his Rule 56 opposition materials, satisfied these elements.
For example, with respect to the element of outrageous conduct, Garcia alleged that Scannell insulted him by implying that Garcia misrepresented the condition of his trade-in vehicle, and threatened him with a lawsuit on what Garcia claims were fraudulent grounds. However, the “outrageous” conduct required to prove the intentional infliction of emotional distress exceeds mere “insults, indignities, threats [and] annoyances.” Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987), quoting RESTATEMENT (SECOND) OF TORTS §46 comment d, at 73 (1965). See Sena v. Commonwealth, 417 Mass. 250, 264 (1994). “It means ... a high order of reckless ruthlessness or deliberate malevolence that ... is simply intolerable.” Conway v. Smerling, 37 Mass. App. Ct. 1, 8 (1994). See, e.g., Lepp v. M.S. Realty Trust, 2008 Mass. App. Div. 44 (prolonged campaign of menacing and predatory conduct, including sexual harassment, humiliation, slander, threats of rape and other physical attacks, and violent public outbursts exceeding all bounds of decency).[5] Scannell’s actions in this case were limited to two, apparently civil, telephone conversations with Garcia — conduct that obviously failed even remotely to approach the outrageous or “profoundly shocking.” Conway, supra at 8. That 128 Sales was, according to Garcia, deceitfully and in bad faith endeavoring to collect money to which it was not entitled would qualify its actions as unfair and deceptive. But it would not trans *281 form two telephone calls into conduct that was “intolerable in a civilized community.” Agis, supra at 145.
Garcia also failed to advance specific facts demonstrating that he suffered sufficiently severe distress to quality for c. 93A compensation. Garcia stated only that the thought of being sued by 128 Sales made him feel “extremely anxious and fearful” because he was unfamiliar with the legal system and could not afford to pay attorney’s fees. He claimed that he felt insulted and abused by Scannell’s statements, experienced “difficulty sleeping” and headaches, and was “distracted from his work obligations and other obligations.” Missing from Garcia’s affidavit, however, were any specific facts indicating the frequency, duration, or severity of his complaints that would have permitted a trier of fact to conclude that he suffered the “severe and objectively unendurable emotional distress,” Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 236 (2008), required for a c. 93A recovery in this case. See Mark Moore Homes v. Tarvezian, 1998 Mass. App. Div. 171 (anxiety, fear, distress, sweating, and lost sleep insufficient to establish severe emotional distress). In fact, in answers to 128 Sales’ requests for admissions, Garcia conceded that his alleged distress did not cause him to lose any time from his work, other employment, or his education; did not result in any physical harm; and did not require him to seek any kind of treatment for physical or emotional concerns.[6]
In short, Garcia failed to marshal specific facts demonstrating that he had a triable claim for emotional distress under c. 93A.
2. The remaining “injury or loss” argued by Garcia as a basis for his c. 93A claim was the legal expenses he incurred in bringing this c. 93A suit. Garcia contended that 128 Sales’ conduct caused him to “retain counsel to protect [his] rights and interests and to try to restore my peace of mind”; and that the costs of doing so amounted to a “loss” qualifying him for c. 93A relief. First, to the extent that Garcia is contending that 128 Sales’ allegedly unfair and deceptive conduct resulted in an invasion of a legally protected interest of his, which Garcia has not clearly identified, he would still be required to demonstrate that such invasion directly caused an injury or loss.
If any person invades a consumer’s legally protected interests, and if that invasion causes the consumer a loss — whether that loss be economic or noneconomic — the consumer is entitled to redress under our consumer protection statute. A consumer is not, however, entitled to redress under G.L.c. 93A, where no loss has occurred.
Hershenow, supra at 802. As noted, 128 Sales did not file a lawsuit against Garcia, or even a counterclaim in this action, which was voluntarily commenced by Garcia himself.
Second, the litigation costs, including attorney’s fees, of filing a c. 93A action may *282 be recovered together with actual or punitive damages only if the plaintiff first succeeds in establishing a valid c. 93A claim, which would require proof of a loss or injury already caused by the defendant’s conduct. Logically, that loss or injury must have occurred prior to, and form the basis for, the c. 93A claim; the subsequent cost of litigating that c. 93A claim would not constitute an element of the claim itself. Chery v. Metropolitan Prop. & Cas. Ins. Co., 2009 Mass. App. Div. 214 (October 13, 2009). Thus, Garcia, who failed to identify any actual loss or injury caused by 128 Sales, could not manufacture a compensable loss by electing to bring this c. 93A action, incurring legal expenses and other costs, and then relying on those litigation costs to constitute the loss or injury prerequisite to the existence of a valid c. 93A claim against 128 Sales. Garcia has simply confused the elements of a c. 93A claim with the components of a statutory recovery on that claim when it is successfully proved. Garcia’s reliance on Siegel v. Berkshire Life Ins. Co., 64 Mass. App. Ct. 698 (2005) for a contrary result is misplaced.[7]
Thus, 128 Sales satisfied its Rule 56 burden of establishing that there was no reasonable likelihood of Garcia proving an essential element of his c. 93A claim at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Summary judgment was properly entered in favor of 128 Sales.
Judgment affirmed.
So ordered.

 A very different description of the intent, purpose, frequency, and content of his telephone conversations with Garcia was provided in an affidavit by Scannell filed in support of 128 Sales’ Mass. R. Civ. R, Rule 56 motion. However, as noted, we consider the evidence, and all reasonable inferences to be drawn from it, favorably to Garcia for purposes of summary judgment review.

 In support of its motion, 128 Sales filed Scannell’s affidavit, together with Scannell’s contemporaneous notes of his telephone conversations with Garcia; an inspection report of the frame damage to the trade-in; the new car sales documents, and Garcia’s answers to Mass. R. Civ. R, Rule 36(a) requests for admissions.

 In opposition to summary judgment, Garcia submitted his own affidavit, outlined above, and a bank statement obtained by him for the first time during discovery in this action. The statement indicated that Eastern Bank had approved a loan for Garcia for only $23,912.00, an amount $2,435.00 less than the financing 128 Sales factored into its new car sales price. Based largely on speculation, Garcia contends that Scannell’s telephone calls evidenced 128 Sales’ illegal scheme either to recover the shortfall resulting from its own financing calculation error, or to “extort” additional money from him on the basis of a fraudulent claim of frame damage to his trade-in vehicle. Garcia’s assertions demonstrated, at best, the existence of a triable issue of fact of whether 128 Sales engaged in actionable unfair and deceptive conduct. Garcia’s evidence was not relevant on the additional element of his G.L.c. 93A burden of proof, namely, that he sustained an actual injury or loss as a direct result of that conduct.

 There is no merit in Garcia’s contention that because he did not include in his complaint a separate count for intentional infliction of emotional distress, he was not required either to establish severe distress as a G.L.c. 93A injury, or to satisfy all of the Agis requirements for proof of the common law tort. As the Supreme Judicial Court stated in Haddad, plaintiffs alleging emotional distress as the basis for their c. 93A claims “still must satisfy all of the jurisdictional requirements of the statute, and still must carry the difficult burden of proof applicable to all intentional infliction of emotional distress claims.” Id. at 869.

 See also Simon v. Solomon, 385 Mass. 91 (1982) (persistent refusal to make repairs resulting in flood of sewage in tenant’s apartment); Boyle v. Wenk, 378 Mass. 592 (1979) (pattern of intentional conduct by private investigator, including repeated telephone calls and appearance at plaintiff’s home identifying himself as a bank robber and rapist, with full knowledge of plaintiff’s weakened condition after her hospitalization, resulting in physical and emotional injuries requiring extended professional care); Rader v. Odermatt, 2008 Mass. App. Div. 154 (refusal to make furnace repairs causing oil, carbon dioxide, and polluted water to enter tenant’s apartment; attempts to terrify tenant by repeated slamming of door for more than half an hour immediately over her head; and false reports to police causing them to appear at tenant’s apartment in the middle of the night).

 Compare Haddad, supra (feelings of anger, loneliness, and helplessness leading to protracted periods of withdrawal and physical pain); Simon, supra (withdrawal, depression, weeping, and shame rendering plaintiff unable to work or care for her children and in need of substantial psychiatric treatment); Agis, supra (weeping, mental anguish, and loss of earnings and wages).

 Contrary to Garcia’s contention, Siegel is authority for the opposite and correct proposition that attorney’s fees incurred in bringing a c. 93A suit do not constitute the plaintiff’s loss or injury, or actual damages. The defendant-insurer in Siegel had employed unfair and deceptive acts to deprive the plaintiff of her ex-husband’s $1.5 million dollar life insurance policy, naming her as a beneficiary, that the probate court ordered transferred to the plaintiff as part of her divorce settlement. When the defendant also canceled other insurance policies of the ex-husband’s in which he had named his creditors as beneficiaries, the creditors brought suit for an assignment of rights to the insurance policy that should have been transferred to the plaintiff. She was compelled to intervene in that suit to protect her existing property interests in the policy as defined and ordered by the probate court. In a subsequent c. 93A suit against the insurer, the plaintiff’s attorney’s fees in her intervenor action were considered part of her actionable loss or actual damages under c. 93A, but the attorney’s fees and costs associated with the c. 93A action itself were not so considered. The Appeals Court stated that “[i]f a c. 93A violation forces someone to incur legal fees and expenses that are not simply those incurred in vindicating that person’s rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property.” Id. at 703. In this case, Garcia’s attorney’s fees were “simply those incurred in vindicating [his claimed] rights under the statute [c. 93A],” and were not an actual loss or injury upon which this c. 93A action he filed could have been properly predicated.